SOPHIA S. HOBART'S ADMR. *v.* H. D. VAIL.

October Term, 1905.

Present: ROWELL, C. J., TYLER, MUNSON, WATSON, HASELTON, and
POWERS, JJ.

Opinion filed May 18, 1907.

*Confidential Relation—Principal and Agent—Transactions Between—Validity—Burden of Proof—Accounting by Agent
—Master's ·Report—Construction—Attorney and Client—
Attorney Acting for Both Parties—Gifts—Delivery—Assignments—Operation and Effect—Evidence—Parol Evidence.*

Wherever a fiduciary or confidential relation exists between the parties
to a deed, gift, contract, or the like, which gives the person confided in an advantage over the other, equity casts upon the former
the burden of showing absolute fairness on his part and freedom
of the other from undue influence.

In a suit in equity to set aside certain assignments, deeds, and agreements executed by the orator's testatrix to defendant, where it appeared that defendant had the possession and management of the
testatrix's whole estate, and was her trusted adviser in all matters,
the burden is on him to show that the testatrix was mentally competent, and did what she did without undue influence, and with full
knowledge of her property and of the nature and effect of her acts.

The finding of the master that the testatrix was a person of strong
mind, in possession of her faculties, and that the transactions in
question were fully and particularly explained to her, amounts to
a finding that she understood the nature and effect of the trans·
actions.

The findings of the master examined and *held* that they show the testatrix to have had an adequate knowledge of her property.

In the preparation of the papers needed to effect the purpose of the
parties to any transaction, an attorney may properly, to their
knowledge, act for each, and give to each the advice necessary for
his protection.

The proceedings of special masters are presumed to be correct, and the burden is on the excepting party to see that any claimed error affirmatively appears.

As the master has found affirmatively that the testatrix was free from undue influence in respect of the questioned transactions, and there is nothing to show that, in reaching this conclusion, he did not consider the presumption to the contrary arising from the confidential relation existing between defendant and the testatrix, it will be presumed on appeal that he did so consider it.

The master, in reaching the conclusion that "no undue influence was had or exercised" in respect of the questioned transactions, having considered the presumption to the contrary arising from defendant's confidential relation toward the testatrix, that finding negatives not only the direct employment of undue influence, but also the influence naturally arising from the testatrix's reliance on defendant's protection and her appreciation of his kindness.

Since defendant, because of his confidential relation toward the testatrix, was required to show that the questioned written assignments from her to him were not the result of undue influence, he was entitled to show by parol any fact from which it could be inferred that the action of the testatrix was consistent with her previous tendencies and purposes.

The acts and declarations of two parties, concurring in the continued recognition and execution of a course of dealing involving the interests of both, are evidence tending to establish a previous understanding to that effect.

A gift by the testatrix to defendant, though he occupied a confidential relation to her, should be sustained where it appears that she was a woman of strong mind and quick apprehension, with an adequate knowledge of her property; that she acted free from undue influence, was fully advised as to the effect of the instruments she executed, did the business through her own attorney, reviewed her situation with him in the absence of defendant, acted in concert with her husband, provided for him to his satisfaction, and has neither surviving issue nor near relatives in need of her bounty.

Where a portion of a woman's share in an estate was being held by the executors, subject only to a burden imposed by her own act, in determining the validity of her gift of this fund, the rule as to the transfer of expectancies does not apply.

Where a testatrix made two assignments of property to defendant, one of all her interest in the estate of her brother and his wife, and the other of all the personal property she possessed at that date; these did not convey the proceeds of an annuity from a fund provided by her daughter and herself.

An assignment under seal and for valuable consideration is sufficient to convey property, regardless of the delivery of the subject-matter.

An assignment of personal property, not under seal, and made in consideration of gratitude for services rendered, should be treated as a gift, and when not accompanied by any delivery of the property, either actual or constructive, is void.

APPEAL IN CHANCERY, Washington County. Heard at Chambers, July 31, 1905, on the pleadings, master's report and exceptions thereto. Decree, *pro forma,* overruling the exceptions, and ordering that the defendant pay the orator the sum of seventy dollars and twenty-five cents, with costs. The orator appealed. The opinion states the case.

*R. M. Harvey, E. M. Harvey* and *W. H. Taylor* for the orator.

Where an antecedent fiduciary relation exists, a court of equity will presume undue influence, and cast upon the party in whom the confidence is reposed the burden of proving the contrary. Pomeroy's Eq. Jur. §955; *Richmond's Appeal,* 59 Conn. 226; *Pironi* v. *Corrigan,* 47 N. J. Eq. 135; *Rhodes* v. *Bate,* L. R. 1 Ch. 252; *Pisani* v. *Attorney General,* L. R. 5, P. C. 517; *Lewis* v. *J. A.,* 4 Edw. Ch. 599; *Tancre* v. *Reynolds,* 35 Minn. 476; *Planters' Bank* v. *Hornberger,* 4 Cold. 564; *Felton* v. *LeBreton,* 92 Cal. 457; *Miller* v. *Whelan,* 158 Ill. 544; *Morrison* v. *Smith,* 130 Ill. 304; *Rochester* v. *Levering,* 104 Ind. 562; *Brown* v. *Bulkley,* 14 N. J. Eq. 451; *U. S.* v. *Coffin,* 83 Fed. 337; *Bailey* v. *Woodbury,* 50 Vt. 166; Mecham on Agency, §§877-879; Story Eq. Jur., §310; Fetter on Equity, 151; *Wright* v. *Vanderplank,* 8 De Gex., M. & G. 133; *Ralston* v. *Turpin,* 129 U. S. 675; *Hobday* v. *Peters,* 28 Beav. 349; *Nesbit* v. *Lockman,* 34 N. Y. 167; *Greenfield's Est.,* 14 Pa. St. 489; *Kisling* v. *Shaw,* 33 Cal. 425; *Huguenin* v. *Baseley,* 14 Ves. 275; *Willin* v. *Burdette,* 172 Ill. 117; *Condit* v. *Blackwell,* 22 N. J. Eq. 481; *Howell* v. *Barker,* 4 Johns. Ch. 118; *McCormick* v. *Malin,* 5 Blackf. 509; *Thomas* v. *Turner,* 87 Va. 1; *Jennings* v. *McConnel,* 17 Ill. 148;

*Elmer* v. *Johnson,* 143 Ill. 513; *Yonge* v. *Hooper,* 73 Ala. 119; *Whipple* v. *Barton,* 63 N. H. 613; *Nesbit* v. *Lockman,* 34 N. Y. 167; *Gray* v. *Emmons,* 7 Mich. 533; *Worrall's Appeal,* 110 Pa. St. 349; *Davis* v. *Smith,* 43 Vt. 269; *Wheeler* v. *Willard,* 44 Vt. 640; *Mott* v. *Harrington,* 12 Vt. 199.

*Zed S. Stanton and George W. Wing* for the defendant.

If the court can see that there were no inequitable incidents, such as undue influence, great ignorance and want of advice, very inadequate price, and the like, it will not interfere merely because one party possessed very much less intelligence than the other, nor because the transaction is not one which in all respects the court approves. *Sawyer* v. *White,* 122 Fed. 223; *President etc.* v. *Merritt,* 75 Fed. 480; *Oxford* v. *Hopson,* 83 S. W. 942; *Mulloy* v. *Ingalls,* 4 Neb. 115; *Shea* v. *Murphy,* 164 Ill. 614; *Delaplain* v. *Grubb,* 67 Am. St. Rep. 788; *Hyman* v. *Wakeham,* 94 N. W. 1062; *Paulus* v. *Reed,* 96 *Ibid.* 757; *Reeve.* v. *Bonwill,* 5 Del. Ch. 1; *Osmond* v. *Fitzroy,* 3 P. Wms. 129; *Clark* v. *Malpas,* 31 Beav. 80; *Harrison v. Guest,* 6 DeGex., M. & G. 424; *Mann* v. *Betterly,* 21 Vt. 326.

The mere fact that a party was very old, or illiterate, or sick, or in pecuniary necessity, will not invalidate a transaction, or be ground for setting aside or defeating a contract, even though made upon an inadequate consideration and without advice, provided the evidence shows that he was competent to form an independent judgment, that he really knew the nature and effect of the transaction in which he was engaged, and acted in it intelligently and deliberately. To impeach such a transaction requires proof of actual fraud or coercion. *Lewis* v. *Pead,* 1 Ves. 19; *Villers* v. *Beaumont,* 1 Vern. 100; *Killian et al.* v. *Blodgett,* 27 Ark. 166; *Graham* v. *Castor,* 55 Ind. 559; *Stone* v. *Wilbern,* 83 Ill. 105; *Green* v. *Green,* 9 Grat. 330; *Pickerell* v. *Morss,* 97 Ill. 220; *Willemin* v. *Dunn,* 93 Ill. 511; *Curson* v. *Belworthy,* 3 H. L. Cas. 742; *Price* v. *Price,* 1 DeGex., M. & G. 308; *Cook* v. *Lamotte,* 15 Beav. 234; *Cowes* v. *Cornell,* 75 N. Y. 91; *McNeill* v. *Cahill,* 2 Bligh. 228; *Hunter* v. *Atkyns,* 3 Mylne & K. 113; *Hovenden* v. *Lord Annesly,* 2 Schoales & L. 607; *Murray* v. *Palmer,* 2 Schoales & L. 474.

MUNSON, J.   At the time of the transactions in question Mrs. Hobart, the orator's testatrix, was about eighty years old. She and her husband were people of small means and limited business experience, inclined to narrow views and economical in their dress and living, but greatly interested in religious and missionary work, and liberal in its support.   Their only daughter had lived with them much of the time, and had expended considerable sums in improving their place.   Shortly before her death, realizing that her parents would be left without any near friend to care for and assist them, and acting with the knowledge of her mother, she requested Mr. Vail, the defendant, to see to them after her death, and he consented to do so.   Vail was a merchant living and doing business in the testatrix' neighborhood, and active in town and church affairs.   After the daughter's death, which occurred in October, 1887, he looked after and assisted the testatrix and her husband, both of whom had unbounded confidence in his ability and integrity.

Early in 1889, Mrs. Hobart inherited over $35,000 from the estates of her brother and his wife, residents of Ohio, whose deaths occurred at about the same time.   The husband died first, and both died testate, but the wills were such that the property passed as though there were none.   Mrs. Hobart was one of four heirs entitled to share alike, and there was a half-brother, who took nothing under the laws of Ohio.   Representatives of the estates, including Mr. Burton, an attorney, visited Mrs. Hobart in March, and arrangements were made for a further meeting at Montpelier.   The defendant and Mr. Hiram A. Huse were present at this meeting.   On this occasion Mrs. Hobart said she considered herself incapable of taking care of the property, and asked what she could do about it.   Some one other than Vail or Huse suggested that as Mr. Vail was already looking after her affairs to some extent, he might undertake the care of this property.   This seemed satisfactory to Mrs. Hobart, and Mr. Vail was asked if he would do it, and said that he would if it was Mrs. Hobart's request.   Mr. Burton then drew up a power of attorney authorizing Vail to receive, invest and manage all the funds in question.   At this interview, on the suggestion of representatives of the estate, Mrs. Hobart consented to an arrangement by which the half-brother was to have an equal share in the property.   There was also some provision or arrangement by which the sum of $13,420 of the estate was retained

to provide an annuity for Annie A. Strickland during her life. Mrs. Hobart's share, under the arrangement including the half-brother, and exclusive of her interest in the Strickland fund, was $25,600. Five hundred dollars of this was left in Cleveland as a gift. The remainder came in a series of payments, beginning in March, 1889, and continuing until September, 1892. Mrs. Hobart gave receipts for the several remittances and indorsed the checks, but all further business connected with the fund was done by the defendant.

In June, 1889, Mrs. Hobart made her will, giving nearly all her estate to certain societies after the death of her husband, and giving $200 to the defendant, and appointing him her executor. In December, 1891, she made a codicil, giving the defendant an additional legacy of $1,000, and the gold watch formerly her brother's. The orator is the administrator with the will annexed.

In December, 1892, Mr. Huse and Mr. Howland went to Worcester for the purpose of making some disposition of the property of Mr. and Mrs. Hobart. . A conversation was had between Mr. Huse and the Hobarts, mainly conducted on the one side by Mrs. Hobart, in which Mrs. Hobart's purpose and wishes were stated, and the effect of what she proposed was explained by Mr. Huse. The main part of the conversation was taken down in shorthand by Mr. Howland, and the conversation is found to have been as shown by his minutes, a copy of which is incorporated in the report. After this conversation Mr. and Mrs. Hobart executed deeds conveying their real estate to Vail, and Vail executed a life lease of the same to the Hobarts; which lease the master says was delivered to and kept by Mrs. Hobart's attorneys, Dillingham, Huse & Howland.

Messrs. Huse and Howland visited Worcester again on the 27th of January, 1893; and on this occasion Mrs. Hobart gave Vail an assignment of all her interest in the estates of her brother and his wife, including her interest in the Annie A. Strickland fund, and signed a discharge of a mortgage which Vail had given her October 3, 1891, to secure an existing indebtedness and any that might afterwards accrue. At the same time Vail gave Mrs. Hobart a writing by which he agreed to render to Mrs. Hobart, while he lived and was capable of doing it, such personal service as he had performed for her the previous year, and to pay her in each year of her life six hundred

dollars as it might be demanded; and also made a will by which he gave her, in case she survived him, the sum of $15,000. It appears further that at or about this time Vail had his life insured for $15,000 for Mrs. Hobart's benefit. On the 10th of March following Vail executed a mortgage to Mrs. Hobart covering the premises deeded him by the Hobarts and other lands, and conditioned to secure the performance of his agreement of January 27, which mortgage was recorded March 21. On the first day of April Vail delivered this mortgage and a certificate from the town clerk to Dillingham, Huse & Howland, and received from them the discharge of his mortgage of 1891 which Mrs. Hobart had signed January 27, and the notes secured by said mortgage. A few weeks later, the Hobarts gave Vail a bill of sale covering all their personal chattels of every description.

The master finds that at the time these papers were executed both Mr. and Mrs. Hobart were in good health, and in possession of their mental faculties; that Mrs. Hobart had always been a person of strong mind and will, with strong likes, dislikes and prejudices, and was at this time bright and keen; that Mr. Huse fully and particularly explained all these matters to Mr. and Mrs. Hobart, and discussed the details of them with great care; that the value of the personal estate was talked over, and the amount called $17,000; and that no undue influence was had or exercised to procure the transfers.

The orator excepted to the use of evidence tending to show any understanding not covered by the papers, and now insists that the nature of the transaction is to be derived from the papers alone, and that the arrangement evidenced by the papers was merely a contract, and that being a contract its validity will depend largely upon the adequacy of the consideration. The master has left the construction of these papers, and the nature of the transaction evidenced by them, to the determination of the court.

The master has incorporated in his report, not as a finding of fact, but as an admission, for whatever bearing it may have upon the subsequent acts of the parties, a statement in the answer, which is, in substance, that about December first, 1892. the testatrix and her husband proposed to give the defendant what property they then had, if he would furnish them a stipulated sum annually, and allow the testatrix to make such donations as she desired out of the property, and maintain a home

for them, and care for them during their lives as he had done for several years previous; and that he accepted the proposition, and that the writings above described were drawn to effectuate this agreement. The master finds, independently of the papers, if permissible to find it from the above statement and from the conduct and statements of Mrs. Hobart and the defendant subsequent to the execution of the papers, that Mrs. Hobart always understood that she would be allowed by the defendant to make such donations as - she desired to out of the personal property and out of any of the real estate she had deeded him. It appears that Mrs. Hobart continued to contribute liberally for missionary and charitable purposes long after the deeds and assignments were made, and that funds for this purpose were furnished by the defendant. It also appears that she once contemplated making a gift of some of the real estate conveyed to the defendant, and that the defendant consented to this in writing, but that nothing further was done about it.

The report was submitted to counsel for their suggestions before filing, and in view of certain requests made by the orator the master reported further, that there was no direct evidence upon the question of undue influence, that the orator claimed the burden was on the defendant to show that the execution of the papers was not procured by undue influence, and that he did not pass upon the question of law, but made his finding that there was no undue influence upon a consideration of certain facts, circumstances and evidence thereafter stated, in connection with other evidence not referred to. The master then refers to the daughter's request in contemplation of her death, the suggestion of the defendant's name in the conference at Montpelier, the conversation at the time the papers were made as shown by Mr. Howland's minutes and his evidence in respect thereto, the relations existing between Mr. and Mrs. Hobart and the defendant, the service the defendant rendered and Mrs. Hobart's appreciation of it as shown by the testimony of witnesses referred to, and Mrs. Hobart's strength of mind and will; and says that if any of these tend to show that no undue-influence was exercised he finds that fact by a fair balance of evidence. Upon the filing of the report the orator excepted to it because the master had not considered the presumption existing, upon the facts shown, that Vail used undue influence.

The master also reports, upon the orator's request, that so far as appeared before him Dillingham, Huse & Howland were the only attorneys either Mr. or Mrs. Hobart or the defendant consulted, and that they acted for both parties in making the papers referred to.

It is unnecessary to consider the questions discussed as to the precise relation which the defendant sustained to Mrs. Hobart before the transfers. It was unquestionably a confidential relation, and such as cast upon the defendant the burden of showing that Mrs. Hobart was mentally competent, and did what she did without undue influence, and with full knowledge of her property and of the nature and effect of her act. He had the possession and management of her entire estate, and was her trusted adviser in all matters. The rule invoked by the orator applies in every case where a confidence has been reposed which gives the person confided in an advantage over the one reposing the confidence. Note to *Richmond's Appeal*, 21 Am. St. 101, 103; *Fisher* v. *Bishop*, 108 N. Y. 25; *Reed* v. *Peterson*, 91 Ill. 288; *Van Epps* v. *Van Epps*, 9 Paige 237; *Shipman* v. *Furniss*, 69 Ala. 555; *Pironi* v. *Corrigan*, 47 N. J. Eq. 135, 20 Atl. 218; *Wilson* v. *Mitchell*, 101 Pa. St. 495.

It is true, as urged by the orator, that the master has not found in terms that Mrs. Hobart understood the nature and effect of the deeds, assignments and agreements, or the amount and condition of her property. But he has found that she was a person of strong mind, in possession of her faculties, and that the transaction was fully and particularly explained to her. This amounts to a finding of the necessary understanding. And we think it sufficiently appears that she had an adequate knowledge of her property. Her connection with and knowledge of the real estate into which a part of the money had been converted, is apparent from the report. There is nothing in the report to impeach the substantial accuracy of the sum mentioned as the amount of the personal property. Her interest in the Annie A. Strickland fund, not then in hand, cannot have been overlooked, for it is specifically mentioned in the assignment.

If it be considered that the circumstances were such as required that she have the benefit of independent and disinterested advice, the facts bearing upon the matter are fully presented. No question is made as to the capability and integrity

of her adviser.   But the orator claims that the relations of Mr. Huse to Vail were such that his advice did not meet the requirement.   It appears plainly enough from the report that Dillingham, Huse & Howland were the attorneys of Mrs. Hobart, except so far as that relation was modified by their acting for both parties in making the necessary papers.   We think that relation to Mr. Vail was not one that deprived the advice of Mr. Huse of the quality which the law requires.   The position of an attorney who acts for both parties, to the knowledge of each, in the preparation of papers needed to effect their purpose, and gives to each the advice necessary for his protection, is recognized by the law as a proper one.   It is evident that Mr. Huse was fully aware of the nature of that relation, and sensible of the obligation it imposed.   As a result of the taking of the conversation in shorthand, we have before us what was said to Mrs. Hobart with a fullness and certainty seldom attainable.   Referring to Mrs. Hobart's expressed intentions as regards Mr. Vail, Mr. Huse said to her: "It would be my duty to make out any papers that you want made out, * * but I should think I was derelict in my duty to you if I came as your lawyer to execute papers giving Mr. Vail a possible benefit, when there was any possibility that the reason of that was because he had over pursuaded you to it."   And after further conversation Mr. Huse said: "This ought not to be left in such shape that Mr. Vail would * * be blamed for appropriating what is intended for him, and on the other hand it should be guarded so that he wouldn't appropriate for himself what is intended for some one else."

Several questions are raised regarding the finding that there was no undue influence.   The master makes this finding, if any of certain matters hereinbefore stated tend to support it.   It is clear that some of them do.   The master does not say upon whom the burden of proof rests as matter of law, but he makes an affirmative finding that there was no undue influence, which is a sufficient finding if the burden was on the defendant.   The finding is made by a balance of evidence.   It is not claimed that anything more is required.   But the fact must be affirmatively found against the presumption to the contrary.   The report is excepted to because the master did not consider this presump-

11

tion in reaching his conclusion. There is nothing to indicate that he did not consider it. The most that can be said is that it does not affirmatively appear that he did. The orator made requests for further findings upon this subject, but was silent as to this particular. It may be questioned whether as a matter of practice such an exception should be considered when the report has been submitted to the inspection of counsel before filing, and they have availed themselves of the opportunity to make such requests upon the subject as they desired. But it is not necessary to pass upon this question of practice. A majority of the court are clear that this matter is within the rule that the proceedings of special masters are presumed to be correct, and that the burden is on the excepting party to see that the claimed error affirmatively appears. It is also argued that the finding that "no undue influence was had or exercised" to procure the transfers must refer to the direct employment of undue influence, and that it does not negative the effect of the influence naturally resulting from Mrs. Hobart's reliance upon the defendant's protection and her appreciation of his kindness. But when it is considered that the master weighed the presumption of undue influence in favor of the orator, a finding in these terms can mean no less than that the transfers were not the result of undue influence.

We have seen that the finding of Mrs. Hobart's understanding regarding her right to make gifts notwithstanding the conveyances is based upon a statement in the answer and upon the conduct and statements of Mrs. Hobart and the defendant after the conveyances were executed. It is urged that parol evidence could not be used to show an agreement not embraced in the writings, and that if Mrs. Hobart's understanding in this respect was material in any way, it could not be found from the evidence above stated. This finding will not be essential in classifying the transaction, but it may have affected other conclusions of the master, and it will therefore be necessary to consider the objections to the evidence on which it is based.

It is clear that parol evidence was admissible to show an understanding of this nature not disclosed by the papers. The bill charged the invalidity of certain instruments which the defendant was required to sustain. To establish their validity, it was necessary to prove that they were not procured by undue influence. This entitled the defendant to show any fact from

which it could be argued that Mrs. Hobart's action was consistent with her previous tendencies and purposes.

We think the conduct and statements of Mrs. Hobart and the defendant subsequent to the execution of the papers could properly be considered in ascertaining what Mrs. Hobart's understanding in this respect was at the time of their execution. It seems clear that the acts and declarations of two parties, concurring in the continued recognition and execution of a course of dealing involving the interests of both, are evidence tending to establish a previous understanding to that effect.

The statement in the answer of the agreement which led to the execution of the papers, taken as a whole, must be regarded as a development of the ground of the defence, and not as an admission. The finding, however, is not coextensive with the averment, but is merely that Mrs. Hobart always understood that she would be allowed to continue her donations. This finding might be given an effect unfavorable to the defendant in reaching further conclusions from all the evidence, and if it was to be so used the clause supporting it might properly be treated as an admission. The master, in finding the ultimate facts reported, must have given this subsidiary fact, found in part from the clause referred to, a bearing favorable to the orator; for, in the findings made subsequent to the requests, he says: "In finding the facts hereinbefore reported, I have not treated the defendant's answer as evidence in his favor, but in so far as it supported any claim of the orator I have treated it as an admission in the orator's favor."

So we have all the findings necessary to establish the validity of a gift to one who sustains a confidential relation to the giver. It is not necessary to consider the transaction with reference to the nature and value of the obligations assumed by the defendant. The transaction was not wholly a contract. It was a contract in so far as it provided for the future support of Mr. and Mrs. Hobart and secured that support on some of the property transferred. It was an intended and completed gift of her property as against the right of inheritance and of testamentary transmission. It was a transfer made upon an understanding that she could still avail herself of the property as a fund for charitable donations, but with her full knowledge that this privilege depended solely upon an unenforceable agreement, and that what remained in the defendant's hands at her

death would be his absolutely. It appears plainly enough from her conversation with Mr. Huse that she expected that the arrangement would result in a substantial benefit to the defendant. She spoke of disposing of some of the property herself if she wanted to, and said she wanted he should have the real estate anyway. The conversation shows that her family connections were in mind when she determined upon this course. Her nearest relatives were her half-brother and his children. She had readily assented to an arrangement by which this half-brother received nearly. $30,000, one-fourth of which was her own gift. She made the transfers in question to one whom her daughter had chosen to look after her, whose kindness she had experienced before the property was acquired, and who continued until her death to treat her with a kindness so constant and complete that it has been characterized as excessive, and urged as proof of a previous sinister design. The fact that she evidently expected that a part of the property left in the defendant's hands at her death would ultimately be devoted to charitable purposes and that this expectation may fail of fulfillment, cannot avail to defeat the gift. It is not necessary to review the many cases brought to our attention in which gifts made to persons sustaining a confidential relation to the donor have been held invalid. It is clear that this case is well within the rule under which such gifts are sustained. A woman of strong mind and quick apprehension, with an adequate knowledge of her property, free from undue influence, fully advised as to the effect of the instruments she executes, doing the business through her own attorney and reviewing her situation with him in the absence of the intended beneficiary, acting in concert with her husband and providing for him to his satisfaction, having no surviving issue and no near relatives in need of her bounty,— may well be suffered to dispose of her property as she sees fit.

It remains to dispose of some questions raised as to certain classes of property that are claimed to stand differently from the bulk of the estate. It is said that Mrs. Hobart's interest in the Annie A. Strickland fund was property of a character that could not be transferred, and that in any event there was a want of sufficient delivery. The report shows that the Strickland estates passed as though there were no wills. Then the fund from which the annuity was derived must have been provided by an agreement among the heirs. So Mrs. Hobart's share in

this fund had in effect been made over, and was being held by the executors by her permission, subject only to a burden imposed by her own act. It is therefore unnecessary to inquire as to the nature and application of the rule regarding the transfer of expectancies. The question of delivery is not important, for this transfer was for a valuable consideration, although conferring an important benefit. In any event, the assignment under seal was sufficient to pass the property. *Connor* v. *Trawick,* 37 Ala. 289, 79 Am. Dec. 58.

Mrs. Hobart received an annuity of $240 which passed into the hands of the defendant. This was derived from a fund of $2,500, provided by her daughter, and from $1,000 paid in by herself in April, 1893. The report contains nothing that requires us to distinguish between these funds. This annuity is not within the terms of either assignment. The first is confined to her interest in the estates of her brother and his wife. The second is of all the assignor's personal property, enumerating a great variety of personal chattels, and closing with the statement, "meaning to convey * all personal property * possessed at this date." This language cannot be held to cover the proceeds of the annuity. The defendant must account for all monies received from this source.

Mrs. Hobart had a life lease of both the village property and the farm. There were two houses on the village lot, one of which she occupied. Whatever income the defendant may have received from the tenant-house and the farm is to be accounted for.

The conveyance of the household goods and other personal chattels is not under seal. It cannot well be sustained on the consideration disclosed by the earlier transaction. So the transfer must be treated strictly as a gift. Mrs. Hobart continued to use the property until her death, after which the defendant took possession of it. No facts appear bearing upon the question of a constructive delivery by one party, or the assertion of any control by the other. The intended gift was ineffectual for want of delivery, and the defendant must account for the value of this property as of July 4, 1902, the date of Mrs. Hobart's death.

*Pro forma decree reversed, and cause remanded with mandate that an accounitng be had of the matters stated, and that a decree be thereupon entered in accordance with this opinion.*