FRANK S. HALE, LYMAN F. CABOT AND EDWARD R. BUCK *v.*
WINDSOR SAVINGS BANK AND WINDSOR COUNTY TRUST
COMPANY.

Special Term at Brattleboro, February, 1914.

Present: POWERS, C. J., MUNSON, WATSON, HASELTON and TAYLOR, JJ.

Opinion filed October 16, 1916.

*Executors—Checks—Indorsement—Bank Deposits — Equitable
Right of Beneficial Owner—Banks—Notice of Nature of
Deposit—Knowledge of Agents—Test of Bank's Liability—
Trust Funds—Breach of Trust—Participation by Bank—
Rights of Sureties on Bond of Deceased Executor—Sur-
render of Collateral Upon Payment of Personal Debt Out
of Trust Fund—Laches—Amendment.*

Where an executor received a check payable to him as executor, in-
dorsed the same as executor, added his personal indorsement, and
deposited it in a bank to his personal credit, *held*, by the in-
dorsement in blank as executor the check became payable to any
one who might become the bearer, the personal indorsement
properly designated it for deposit to the executor's personal
credit, and when so deposited the bank owed the amount of the
deposit to him personally, and in ordinary course was bound to
pay it to his order on demand, unless a claim to it was as-
serted and established by some one else.

The right of the beneficial owner of a fund on deposit in a bank
against the bank is equitable, and properly cognizable in a court
of equity.

A bank is chargeable with the knowledge had by such agents as its
teller and bookkeeper, and cannot claim to hold the money re-
ceived by such an agent without being charged with the knowl-
edge which the agent had when receiving it.

A suit by the sureties upon deceased executor's bond against his
successor in the trust, for the purpose of compelling the latter to
collect a portion of the trust fund, wrongfully used by the exec-
utor for the payment of his personal obligations, from one who
had received the same with knowledge of its fiduciary character,
is cognizable in equity.

Where an executor received a check payable to his order as "Executor of the Amanda M. Pike Estate", representing funds of the estate and indorsed the same as executor and also personally, deposited it to his personal account in the bank, and the next day paid his personal obligations to the bank out of the funds represented by the check, the bank was charged with knowledge that the funds were held in trust as property of the estate, and that the executor's personal indebtedness was paid out of the avails thereof.

The test of the liability of a bank which receives trust funds in payment of personal obligations owed to it by the trustee, with knowledge of their fiduciary capacity, is not the procurement of a benefit by the bank, but an infliction of a loss upon the fund, and the absence of initiative on the part of the bank is immaterial.

Where an executor is indebted to a bank which has the legal custody of the assets of the trust estate, and applies a portion of the assets in the payment of his debt to the bank, such bank has notice of the breach of trust, and participates in it for its own personal benefit.

Where a bank has received payment of an individual debt of an executor to it, out of a trust fund, with knowledge of its character, and has released collateral by which the debt was secured, it cannot urge the surrender and loss of its collateral to defeat the claim of the sureties upon the executor's bond, in a suit brought by them to compel the repayment of the trust funds by the bank to the executor's successor in the trust, such suit being brought in default of such action by the trustee.

The sureties on the bond of a deceased executor, who has paid his personal obligation, out of the funds of the estate to a bank which had the custody of the funds, and which received the same with knowledge of their character, may pay the amount of the loss, and thereafter present a claim against the estate, and sue the bank for any balance remaining unsatisfied; or they may bring a bill in equity against the executor's successor in the trust to compel proceedings against the bank for the recovery of the funds unlawfully appropriated.

The money received by the bank, out of the trust fund, with knowledge of its character, was still the property of the trust; and it was the duty of the bank to return it to the trustee in exoneration of the sureties on the bond of the deceased executor.

In such case the sureties were not guilty of laches by failing to assert their claim against the bank, while no claim was being made upon them under their bond.

Motions for amendments to bills in chancery, introducing new issues of fact are not usually disposed of in Supreme Court; but may be allowed by the court of chancery on a remand of the case.

APPEAL IN CHANCERY. Heard on facts found by the chancellor, at the June Term, 1913, Windsor County, *Miles,* Chancellor, presiding. Decree dismissing the bill, with costs. The orators appealed. The opinion states the case.

*William W. Stickney, John G. Sargent* and *Homer L. Skeels* for the orators.

No portion of a trust fund can be diverted to pay the trustee's individual debt to the bank, unless the bank did not know and had no reason to suppose that the money was part of a trust fund. *Munnerlyn* v. *Augusta Bank,* 94 Ga. 356; *Bundy* v. *Monticello,* 84 Ind. 119; *Burtnett* v. *Corunna First Nat'l Bank,* 38 Mich. 630; *Bank of St. Paul* v. *Stillwater Gas Co.,* 36 Minn. 75; *Wood* v. *Stafford,* 50 Miss. 370; *Clark* v. *Bank of Harrisonville,* 57 Mo. App. 277; *Van Alen* v. *American Nat'l Bank,* 52 N. Y. 1; *Union Stock Yards Bank* v. *Gillespie,* 137 U. S. 411; *Manhattan Bank* v. *Walker,* 130 U. S. 267; *Bethlehem First National Bank* v. *Peisect,* 2 Pa. Su. Ct. Rep. 277; *Stephens* v. *Board of Education,* 35 Am. Rep. 511; *Bank* v. *Jones,* 18 Texas 811; *Overseers of the Poor* v. *Bank of Virginia,* 44 Am. Dec. 399; *Central National Bank* v. *Conn. Mutual Life Insurance Co.,* 103 U. S. 783; *Shaw* v. *Spencer et al.,* 100 Mass. 382; *Bayne et al. Trustees* v. *United States,* 93 U. S. 642; *United States* v. *State Bank,* 96 U. S. 30.

The check was written as an order to pay Joseph C. Enright, Executor of the Estate of Amanda Pike. This was an explicit notification to the bank that Enright was not the actual owner of the money. See *Walker* v. *Taylor,* 4 Law Times, 845; *Duckett* v. *Mechanics National Bank,* 3 Am. & Eng. Cy. of Law, 2 ad. 832; 63 Am. St. Rep: 521; *Shaw* v. *Spencer,* 100 Mass. 382; *Am. Exchange Bank* v. *Loretta Manning Co.,* 165 Ill. 19; Wharton on Agencies, s. 177, 178; Story on Agencies, s. 140; *Jackson* v. *Sharp,* 6 Am. Dec. 267; Wharton on Agencies, s. 183 and 184;

Story on Agencies, s. 148; *Fulton Bank* v. *N. Y., etc., Canal Co.,* 4 Page's Ch. 127.

The bank was bound by the knowledge of the clerk who took the deposit. It is well settled that if anything appears to a party calculated to attract attention, or stimulate inquiry, the party is affected with knowledge of all that the inquiry would have disclosed. *Fulton Bank* v. *N. Y., etc., Canal Co.,* 4 Page's Ch. 127; The Distilled Spirits, 11 Wall. 356; Am. Law Re., Vol. 16, New Series, p. 1; *Fairfield Savings Bank* v. *Chase,* 72 Me. 226; *Goodloe* v. *Godley et al.,* 13 S. M. & M. (Miss.) 233; *Wilcox* v. *Routh,* 9 S. M. & M. (Miss.) 476; *Wilkins* v. *The Commercial Bank,* 6 How. 217; *Cragie et al.* v. *Hadley,* 99 N. Y. 131; *Smith* v. *Board of Water Commissioners,* 38 Conn. 208; *Bunting* v. *Ricks,* 32 Am. Dec. 699; *Fulton Bank* v. *N. Y., etc., Canal Co.,* 4 Page's Ch. 127; *Bank* v. *Tyler,* 3 W. & S. 376; *Perry* v. *Simpson Waterproof Mfg. Co.,* 37 Conn. 520.

The court of chancery has jurisdiction. *Abell* v. *Howe et al.,* 43 Vt. 403; Murfree on Official Bonds, sec. 341; *Guphill* v. *Isbell,* 19 Am. Dec. 677; *First Congregational Society in Raynham* v. *Trustees, etc.,* 23 Pick. 148; *Stockwell* v. *Fitzgerald,* 70 Vt. 468; *Canfield* v. *Andrew,* 54 Vt. 12; *Vail and Wife* v. *Blodgett and Wife,* 49 Vt. 27; IV Kent's Com. 188; *Bishop* v. *Day et al.,* 13 Vt. 81; Annotated Cases 1912, Vol. C, 369; 1 Perry on Trusts, p. 288; 1 Perry on Trusts, p. 289; *Langdon* v. *Baxter Nat. Bank,* 57 Vt. 1; *Towle* v. *Mack et al.,* 2 Vt. 19; Wood on Limitation of Actions, p. 115.

*Clarke C. Fitts, Hermon E. Eddy* and *Hale K. Darling* for defendant Windsor Savings Bank.

The court of chancery has no jurisdiction over this suit. *Walcott* v. *Hamilton,* 61 Vt. p. 87; *Darling* v. *Ricker,* 68 Vt. p. 473; *Druon* v. *Sullivan,* 66 Vt. 609; *Safford & Co.* v. *Gallup,* 53 Vt. 291; *Barrett* v. *Sargent,* 18 Vt. 365.

The Savings Bank was not chargeable with any duty as to the application of the check. As a general proposition, the depositor is presumed to be the real owner of the funds standing in his name. *School District of Greenfield* v. *First National Bank,* 102 Mass. 174; *In re Plankinton Bank,* 87 Wis. 378, 58 N. W. 784; 3 Am. and Eng. Ency. of Law (2nd ed.) 831; 5 Cyc. 517; *Egbert* v. *Payne,* 99 Pa. St. 239; *Lock Haven First*

indorsed this check in blank as executor, added his personal v. *Freights,* 137 Fed. 534; *Eyerman* v. *St. Louis 2nd Nat. Bank,* 13 Mo. App. 289 affirmed in 84 Mo. 408; *Swartwout* v. *Mechanics Bank,* 5 Den. (N. Y.) 555; *McLane* v. *Wallace,* 103 Ind. 562; *Munnerlyn et al.* v. *Augusta Savings Bank* (Ga.), 14 S. E. 554; *Duckett* v. *National Mechanics Bank,* 86 Md. 400, 39 L. R. A. 84.

The executor's indorsement in blank made the check paythen by Enright personally, contained the implied instruction to the bank to pay the amount to Enright personally or deposit it to his personal account. The deposit slip directed the bank to deposit it to his personal account. The bank was bound to follow the instructions contained in the check and slip. *State National Bank of Springfield* v. *Dodge,* 124 U. S. 333; *Sparrow* v. *State Exchange Bank of Macon* (Mo. 1903), 77 S. W. 168; *Mayer* v. *Bank,* 86 Mo. App. 108; 2 Morse on Banks and Banking, 3rd ed., Sec. 604; *Powell* v. *Morrison,* 35 Mo. 244; *Thornton* v. *Rankin,* 19 Mo. 193; *U. S. Fidelity & Guaranty Co.* v. *Adone & Lobit,* (Tex. 1910), 128 S. W. 636; Notes to 52 L. R. A. 790; 1 L. R. A. (N. S.) 1110; 10 L. R. A. (N. S.) 706; *National Bank* v. *Conn. Mutual Life Ins. Co.,* 104 U. S. 54; *U. S. Fidelity & Guaranty Co.* v. *First National Bank of Monravia,* (Cal. 1912), 123 Pac. 352.

The orators are estopped from seeking to recover from the Savings Bank, because of their laches, and negligence in permitting property, which unquestionably belonged to the Pike Estate, as orators knew or ought to have known, to go into the general assets of Enright's Estate. 16 Cyc. 171; *McDaniels* v. *President, etc., of Bank of Rutland,* 29 Vt. 230; 16 Cyc. 150. And see 16 Cyc. 162 and 163, and cases there cited; *Dickerman* v. *Burgess,* 20 Ill. (10 Peck.) 266; *Phillips* v. *Rogers,* 53 Mass. (12 Met.) 405; 16 Cyc. 162; *Daggers* v. *Van Dyck,* 37 N. J. Eq. (10 Stew.) 130; *Delane* v. *Moore,* 14 How. 253; *Ford* v. *Loomis,* 33 Mich. 121.

*Bert E. Cole,* for defendant Windsor County Trust Company.

MUNSON, J. Joseph C. Enright, the executor of Amanda M. Pike, received a check for $5,125, payable to him as executor, and covering funds belonging to his testate's estate. He

indorsed this check in blank as executor, added his personal indorsement, and deposited the check to his personal account in the Windsor Savings Bank, defendant herein, an institution doing a general banking business. The next day he took up six notes made by him and held by that Bank, amounting to $4,471.30, and paid two other personal liabilities to the Bank, amounting to $215, giving the Bank his personal check covering both sums. Enright died insolvent thirty months later, leaving a shortage in the Pike estate. The orators are the sureties on Enright's probate bond, and have been sued for his default, and bring this bill to charge the Savings Bank on account of the transaction above stated.

The executor's indorsement in blank made the check payable to any one who might become the bearer, and made it available to such bearer for bank deposit by his becoming an indorser of it. Enright's personal indorsement of this check properly designated it for deposit to his credit, and when credited in his personal account the bank owed the amount of the deposit to him personally, and in ordinary course was bound to pay it to his order on demand, unless a claim to it was asserted and established by some one else. The case presents the question whether the fact that this check was on its face the property of the Pike estate held in trust by Enright, and that Enright was on the face of the transaction applying it to his own use, made the bank liable for subsequently accepting payment from the account. In considering this question it will be necessary to have before us a statement of the circumstances attending the appropriation and a description of the obligations paid.

For a long time previous to this transaction Enright had been keeping an account with the defendant Savings Bank in his own name, subject to check, in which he deposited from time to time large sums received from various sources, including money and checks belonging to estates of which he was trustee or administrator, as well as money and checks received from an extensive and varied private business, and from a law business conducted by himself and orator Buck; and upon which he drew checks to pay debts and demands against himself, and the estates in his hands, and the law firm of Enright & Buck. This account showed a balance of $456 at the time the check in question was deposited. Other funds, amounting to $163.43, were

deposited at the same time. The deposit was made and the deposit slip filled out by Enright's clerk and bookkeeper, and was received by the clerks of the defendant and credited to Enright's account according to the direction of the deposit slip. The check in question, in going through the usual banking process, was handled solely by the defendant's clerks.

All the notes taken up were payable on demand. One note, amounting with interest to $977, was signed by two sureties and secured by a policy of life insurance. Two notes, amounting to $1,158, were signed by the orator Buck as surety. A note for $1,200 was secured by a mortgage on three houses in Windsor, executed to Enright and assigned to the bank as collateral. A note for $800 was secured by an assignment of a note and the mortgage securing it on a house in Windsor. A note for $1,000, reduced by payment to $315, was secured by a mortgage on a brick block in Windsor owned by Enright. At the time of the transactions in question Enright was considered perfectly good financially; and later in the same year the defendant Bank loaned Enright, on notes signed by himself and Buck, sums about equal to the loans represented by the previous notes on which Buck was surety.

As before stated, Enright's indebtedness was paid on the day following the deposit of the check; and it is found that the entries in the defendant's cash book relating to the taking up of the notes, as well as the marginal figures of interest on each note and the discharge of the mortgage securing the $1,000 note, are in the handwriting of A. W. Harris, who was then the treasurer of the defendant Bank and has since deceased. Except as thus shown, the case does not disclose whether any officer of the Bank had personal knowledge of this check or of the disposal of it after it was deposited.

The accounts of the transactions in which the payments from Enright's bank account were made, and of the payments themselves, were mostly kept by the bookkeeper of the law firm of Enright & Buck on Enright's books, which were kept at the office of the firm, and were at all times open to the inspection of either member of the firm; and orator Buck from time to time made entries therein. The entries on these books showed in detail all the particulars relating to this check and the use to which it was put, except the fact that it was payable to Enright as executor of Amanda M. Pike.

Orators Hale and Buck were appointed administrators of Enright's estate, and upon examining the decedent's accounts and affairs discovered that there was a shortage in the Pike estate. Hale learned from the books that Enright had received a check payable to the Pike estate, and had used it in paying some of his notes. Among the assets which came into the possession of the administrators were the properties securing the first, fourth and fifth notes above described, and from these they realized and placed among the general assets of the estate $2,600. Both Hale and Buck presented and had allowed claims of considerable size against Enright's estate. Orator Cabot knew, soon after Enright's death, of his misappropriation of a part of the Pike estate, and knew that Hale and Buck were his administrators, but he made no inquiry regarding the matter, and permitted the estate to go to final settlement without protest. Enright's estate paid about fifty cents on the dollar.

Enright's successor in the Pike trust, the defendant Windsor County Trust Company, having discovered that there was a shortage in the Pike estate, demanded reimbursement from the sureties on Enright's bond, the orators herein, and brought suit to inforce its claim. This occurred more than four years after the death of Enright and the appointment of the orators Hale and Buck as his administrators. The Savings Bank asserts as one ground of defence the laches, negligence and concealment of the orators. It is stated in the orator's brief that the purpose of the suit is to compel the Trust Company to perform its duty and collect from the Savings Bank the trust fund belonging to its *cestui que trust*.

The claim that the matter is not cognizable in equity is unfounded. The contract arising from the transactions evidenced by a bank account is solely between the depositor and the bank, and has no reference to the beneficial ownership of the moneys deposited. No privity is created thereby between the bank and the one beneficially interested. The right of the beneficial owner as against the bank is equitable, and properly cognizable in a court of equity. *Union Stockyards Nat. Bk.* v. *Gillespie*, 137 U. S. 411, 34 L. ed. 724, 11 Sup. Ct. 118.

The claim that there can be no recovery because no officer of the bank had knowledge of the transaction is not sustainable. A bank is chargeable with the knowledge had by such agents as its teller and bookkeeper. It cannot claim to hold the money

received by such an agent without being charged with the knowledge which the agent had when receiving it. *Lowndes* v. *City Nat. Bk.,* 82 Conn. 8, 72 Atl. 150, 22 L. R. A. (N. S.) 408.

The decree below was for the defendants; and the defendant Windsor Savings Bank, hereafter referred to in speaking of the defendant, urges that there is no finding of knowledge on its part. There is no such finding in terms. So it will be necessary in examining the authorities to notice any bearing they may have on the question whether the facts reported amount to a finding of knowledge; for the facts found may be such as to make an express finding unnecessary. *Hobart* v. *Vail,* 80 Vt. 152, 66 Atl. 820.

There are many cases in which the courts of different jurisdictions have considered what circumstances are sufficient to charge a bank with knowledge of the fiduciary character of a deposit, and what participation in a misappropriation of the fund, had with this knowledge, will make the bank liable if loss results to the beneficial owner. As regards the question of knowledge, these cases may be divided into those where the relation of the depositor to the account was indicated by some general designation,—as executor, trustee, or the like,—and those where the designation connected the depositor with the administration or custody of some particular fund. As regards the action taken, the cases may be classified as those where the fund was disbursed to other parties on the order of the depositor, and those where the bank itself became the recipient of the fund.

The courts are not entirely agreed as to the effect of a general designation. It is said in *Eyerman* v. *Second National Bk.,* 13 Mo. App. 289, that the ordinary relation between a bank and its depositor is not changed by the addition to his name of the words ''county treasurer,'' or other like designation; that additions of this character have no legal significance beyond a description of the person, and are not in themselves sufficient to impart notice that the fund is held in a fiduciary capacity. This accords with a number of decisions in that jurisdiction. The opposite view is taken in *Bundy* v. *Monticello,* 84 Ind. 119. Here, one who had received money in trust, and had deposited a sum to his personal account, checked money from this account and deposited it to himself as trustee. The Bank had no notice of the character of the funds, other than such as was imported by

the manner of the deposit. The court considered that the word "trustee" was not merely *descriptio personae,* but imported the existence of a trust, and was notice of the character of the fund. In *Hickory Bank* v. *McPherson,* 102 Miss. 852, 59 South. 934, it appeared that a check was made payable to George B. Harper, Commissioner, and indorsed in like manner. The court held that these facts denoted to an ordinarily prudent person that Harper was acting in some sort of a fiduciary capacity in regard to the money ordered to be paid to him, and that the bank was liable for allowing him to deposit the funds to his own credit, and later to apply them to his private debts.

It is not necessary to refer to other cases of this class identical in import. Any disagreement there may be in regard to the effect of a general designation as notice is not important here, for the check in question was payable to Enright as executor of an estate named. In proceeding with the consideration of the case we give special attention to three decisions which are cited by the orators and commented upon by the defendant.

One of the most important and frequently cited cases on this subject is *Central Nat. Bank of Baltimore* v. *Conn. Mut. L. Ins. Co.,* 104 U. S. 54, 26 L. ed. 693. This was the case of a general insurance agent, who kept a bank account for the transaction of that business in his name as "general agent," and sometimes deposited to the account money not belonging to the company and drew checks upon the account for his private use. The bank charged to this account an overdue note of the depositor without his knowledge. The bank had full knowledge of the business of the depositor, and of the purpose and character of the account. The opinion refers to the facts regarding this, and observes that the question is not what the rights of the parties would have been if the bank had had no knowledge of the character of the account except what might be inferred from the use of the words "general agent." It is said of the relation between the bank and such a depositor, that a bank account, even when a trust fund, and designated as such by the addition of "trustee," differs from trust funds permanently invested in the name of trustees, in that it is made to be checked against, and represents a series of current transactions; that the contract between the bank and the depositor is that the former will pay according to the checks of the latter, and that when checks are drawn in proper form the bank is bound to presume

that the trustee is in the performance of his duty, and honor the checks accordingly. The issue in hand was then disposed of as follows: "But when against a bank account, designated as one kept by the depositor, in a fiduciary character, the bank seeks to assert its lien as a banker for a personal obligation of the depositor, known to have been contracted for his private benefit, it must be held as having notice that the fund represented by the account is not the individual property of the depositor if it is shown to consist, in whole or in part, of funds held by him in a trust relation."

The defendant distinguishes the above case from the one at bar on the ground that there the bank had knowledge regarding the funds in question outside that conveyed by the terms of the deposit. But there the account was designated merely by the words "general agent"; and the opinion plainly indicates that if the designation had named the principal for whose business the account was kept the further information would have been considered unnecessary.

In *Munnerlyn* v. *Augusta Savings Bank*, 88 Ga. 333, 14 S. E. 554, 30 Am. St. Rep. 159, the plaintiff sued as trustee for money which he claimed the bank received on deposit with knowledge that it was trust property and subject to the check of the trustee as agent, and which it had refused to pay out on a check so drawn. The right of the plaintiff in these circumstances was stated as follows: "When money is deposited in a bank, it is immaterial, so far as the bank is concerned, in what capacity the depositor holds or owns it. The obligation of the bank is simply to keep it safely and return it to the proper person. Therefore, when a trustee deposits money in a bank to his credit as agent, the bank would be discharged by paying it back to the individual who made the deposit, and in the absence of knowledge or notice to the contrary, would have the right to assume that he would appropriate the money to its proper uses and trusts. * * * That a trustee deposits money in bank to his credit as agent is not a conversion of the fund, even though the bank knew of the existence of the trust." But the opinion proceeds to say: "Of course, if the bank actually knew the trustee was misapplying the trust money, and aided him in so doing,—as, for instance, by endeavoring to appropriate such money to the payment of a debt incurred for his private

benefit and due by him individually to the bank,—an entirely different question would be presented."

The case of *Duckett* v. *National Mechanics Bank,* 86 Md. 400, 38 Atl. 983, 39 L. R. A. 84, 63 Am. St. Rep. 513, is specially important because its disposition involved the consideration of two checks presenting differences which led to different conclusions. One check read: "Pay to the order of James Scott, cashier, $2,024.30, to deposit to the credit of Henry W. Claggett, trustee." The proceeds of this check were credited to Claggett's personal account, and were drawn by him and fraudulently disposed of. The court held that the language of the check informed the bank of the character of the fund, and directed the disposal of it, and that in crediting the proceeds to Claggett personally it knowingly aided in the misappropriation, and became liable for the amount of it to Claggett's successors in the trust. The court remarked that it was no answer to say that if the bank had deposited the funds to Claggett as trustee he could have withdrawn them on checks properly signed and then have misapplied them without the bank becoming liable. The other check read: "Pay to the order of James Scott, cashier, $2,000, for deposit to credit of Henry W. Claggett; being the balance of purchase money due him as trustee from John R. Coale." The court held that the memorandum descriptive of what the funds were was not an instruction to the bank, nor a notification which controlled the explicit direction in the body of the check, and that in depositing the proceeds of the check to Claggett's personal account the bank did exactly what the check required it to do, and incurred no liability.

The defendant argues that the check in this case as indorsed by Enright, first as administrator and then personally, contained an implied instruction to the bank to pay the amount to Enright personally or deposit it to his personal account. But the instruction contained in the check in the Duckett case which was held to require a deposit to Claggett personally was the instruction of the person who transferred the fund to the individual who was in fact a trustee. The true comparison will be found by assuming that the check in question was without the words "executor of Amanda M. Pike," and merely recited that the fund was a part of the Pike estate.

In *Allen* v. *Puritan Trust Co.,* 211 Mass. 409, 97 N. E. 916, L. R. A. 1915 C. 518, decided in 1912, the court brought to-

gether by citation and comment its previous decisions upon this subject, and passed upon different transactions of the defaulting party as presented by the findings of a master. In this case William L. Baker, the administrator of Albert H. Bird's estate, kept with the defendant an individual account, and an account of moneys belonging to the estate, entitled "Estate of Albert H. Bird; Wm. L. Baker, administrator." In several instances Baker made the defendant good for overdrafts upon his individual account by depositing to that account checks drawn to his own order on the estate account. The master found that when the defendant received these deposits, and thus reimbursed itself for Baker's overdrafts, it "thereby, and by that alone, had notice" that Baker was paying it from funds belonging to the Bird estate, and was put upon inquiry as to whether Baker had a right to use the funds for that purpose. The court sustained this conclusion; saying that on the face of the contract the money belonged to the estate, and that the defendant must be held to have known that if the administrator appropriated it to his own use the appropriation would be a breach of his trust. The court said further that it was not a sufficient answer to say that if inquiry had been made the administrator might doubtless have given an explanation which would have seemed reasonable; that having notice of the trust, the defendant was dealing with trust funds, and was bound by the information which it could have obtained by a full inquiry.

It was said in the case just cited, with reference to the transactions above considered, that the officers and agents of the defendant, in the discharge of their several duties, were charged with knowledge of the scope and effect of the various entries relating to the deposit as shown on the defendant's books. This being so, no distinction as regards knowledge can be made between that case and this because of the character of the Enright account and the process by which the indebtedness was paid. The check deposited was by its terms the property of the Pike estate, and the state of the account showed that the avails of the check were used in making the payment. The wrongful deposit of the check did not defeat the equitable title of the beneficial owner.

We are now to inquire what participation on the part of a bank in the misappropriation of a fund known to be held in trust will subject the bank to liability. This question has

often arisen in connection with the payment of checks drawn by a trustee in favor of parties other than the bank; and the duty of the bank in such cases has been variously expressed. It is said that a bank receiving in due course of business checks and drafts payable to and properly indorsed by trustees in their trust capacity, is not charged with the duty of supervising the administration of the trusts. *Brookhouse* v. *Union Pub. Co.*, 73 N. H. 368, 62 Atl. 219, 2 L. R. A. (N. S.) 993, 111 Am. St. Rep. 623, 6 Am. Cas. 675. But it is said that if a bank is charged with notice that a wrongful application of a trust deposit is being made for the benefit of others, and assists in the accomplishment of the misappropriation, it will be liable to refund the money. *Allen* v. *Puritan Trust Co.* It is not necessary to search the cases to ascertain the proper application of general statements of this character, for the question is not directly involved; and nothing herein said or quoted is to be taken as an intimation upon this branch of the subject.

The claim asserted here requires us to consider what participation of the bank in a transaction by which it receives trust funds in payment, will be necessary to establish its liability. The case reported justifies the defendant's claim that the payment made was the voluntary act of the debtor, in no way induced by anything said or done on the part of the bank. The defendant insists that a bank will not be liable unless it seeks by some demand, request or suggestion to obtain the payment, in such circumstances that it profits by the payment. The first part of the claim is perhaps due to the remark occasionally made that the bank must actively aid the trustee in the misappropriation of the fund. See *Am. Trust etc. Co.* v. *Boone,* 102 Ga. 202, 29 S. E. 182, 40 L. R. A. 250, 66 Am. St. Rep. 167. And the general statement that a bank cannot profit by an application of trust funds seems to have been taken to require participation in a transaction which betters its condition. The defendant refers to the opinion in *Lowndes* v. *City Nat. Bk.,* 82 Conn. 8, 72 Atl. 150, 22 L. R. A. (N. S.) 408, which emphasizes the fact that the trust funds were transferred to the bank in substitution for dishonest checks and notes of equal amount, but of no substantial value; and contrasts this transaction with the payment here, where nearly all of the indebtedness was secured by obligations which afterwards proved nearly sufficient to cover the amount secured. It cannot be said upon this state-

ment that the defendant did not profit by the transaction in the sense claimed by the plaintiffs. But the reasoning of the cases indicates plainly that the absence of an initiative on the part of the bank is immaterial, and that the test of liability is not the procurement of a benefit by the bank, but the infliction of a loss upon the fund. The conclusion of the whole matter may be given in the words of Lord Westbury in *Fray* v. *Johnson*, L. R. 3 Eng. & Ir. App. Cas. 1: "If an executor or a trustee who is indebted to a banker, or to another person, having the legal custody of the assets of a trust estate, applies a portion of them in the payment of his own debt to the individual having that custody, the individual receiving the debt has at once not only abundant proof of the breach of trust, but participates in it for his own personal benefit."

It remains to inquire whether the Savings Bank can defend on the ground that the laches and concealment of the orators have deprived them of a remedy growing out of the surrender of their securities. In taking up the inquiry we assume without examination that the findings are sufficient to raise the question.

Enright died in January, 1907. It is alleged in the bill and admitted in the answers that defendant Trust Company was appointed trustee of the Pike estate in July, 1907, and has acted as such trustee ever since. It was the duty of the orators Hale and Buck, as administrators of Enright's estate, to render Enright's account as trustee of the Pike estate; and the answers aver that this was done in September, 1907. The rendition of this account in the probate court, in connection with the transfer of the funds to the new trustee, must have ascertained the existence and source of Enright's defalcation and determined the amount. The bill alleges and the answers admit that there is due the Pike trust on account of Enright's defalcation $2,453.71; and that the Trust Company has demanded and now claims that amount from the sureties. It appears from the findings that this demand was made upon the sureties in the summer of 1911. So it appears that from September, 1907, to the summer of 1911 the affairs of the Pike trust were in the hands of the defendant Trust Company, and that such action as may have been taken in the interval to secure a repayment of the money abstracted by Enright must have been taken by that company.

We see no ground on which the defendant Savings Bank can urge the loss of its collateral to defeat the claim of the sureties. In appropriating the funds of the Pike estate to the payment of his debts, Enright committed a wrong, not only against the estate, but against the sureties. This wrong could not have been accomplished without the concurrent act of the bank. In accepting payment of Enright's indebtedness from the trust fund with knowledge of its character, the bank committed a wrong against both the estate and the sureties. When Enright's account as trustee was settled, and the amount of the defalcation determined, the sureties had the choice of two courses. They could have paid the amount of the loss, and presented a claim therefor against Enright's estate, and sued the bank for any balance remaining unsatisfied; or they could have brought a bill in equity against Enright's successor in the trust to compel proceedings against the Savings Bank for the recovery of the funds unlawfully appropriated. Having these rights against the bank, it is difficult to see how the sureties can be held responsible for failing to have the surrendered collateral set aside for the bank's protection, when the bank did nothing to protect itself. The bank knew what it had done, and what money it held; and as regards this matter it must be presumed to have understood the legal consequences. If the bank was entitled to rely on the action or non-action of the Trust Company as Enright's successor in the trust, not less so were the sureties.

The Trust Company is entitled to maintain a suit against the Savings Bank to reimburse the fund. In an action brought by that company, the defendant Savings Bank could not plead the surrender and loss of its security to defeat a recovery. No more can it make this defence against the orators who sue in default of such action by the trustee. Doubtless there is nothing to charge the defendant bank with an actual fraudulent purpose or expectation of loss to the fund. But it is in the position of having knowingly accepted from trust funds which were in its custody a payment made them by the trustee in fraud of his trust. The money so received, and not heretofore recovered, is still the property of the trust; and it is the duty of the Savings Bank to return it to the trustee in exoneration of the sureties. We think the relations of orators Hale and Buck to Enright's estate as administrators and creditors cannot be made available to relieve the Savings Bank from the consequences of its wrong-

ful appropriation and accompanying surrender of collateral. The sureties have lost no right by the failure to assert their claim against the bank while no claim was being made upon them from any source.

*Decree reversed and cause remanded with directions that, unless further proceedings in the court of chancery are there petitioned for and permitted conformably to section 1317 of the Public Statutes, a decree be entered that the defendant, The Windsor County Trust Company, as trustee of the estate under the will of Amanda F. Pike, have and recover of the defendant, The Windsor Savings Bank, the sum of twenty-four hundred fifty dollars and seventy-one cents, and interest thereon from August first, 1911, and that the defendant, The Windsor County Trust Company, discontinue its suit now pending in Windsor County Court brought in the name of the probate court for the District of Windsor against the orators, with costs to the orators. Let the orators also recover of the defendants their costs of suit in this cause.*

Upon the reading of the above opinion, counsel for defendant Savings Bank asked that the entry order be withheld to permit the filing of a motion for a rehearing; and this being done, and the case entered with the Court, a motion for rehearing was filed in vacation, and briefs presenting the claims of the defendant and the objections of the orators were received and considered.

It is claimed that the case should be reopened for further argument because the court acted under a misapprehension regarding the course of the defendant Trust Company, as trustee of the Pike estate, during the four years preceding the bringing of the suit. The claim is based on the statement in the opinion that "if the bank was entitled to rely on the action or non-action of the Trust Company as Enright's successor in the trust, not less so were the sureties." The answer states that the Trust Company, as trustee of the Pike estate, presented a claim against Enright's estate for the balance not accounted for, and that its claim was allowed. It does not appear that the Trust Company attempted in any way to obtain the benefit of the securities released by the bank, nor whether it had knowledge regarding them. It was claimed by the bank that the orators were guilty

of laches in not seeing to it that these securities were segregated for the benefit of the claim thus presented and allowed. These matters suggest questions as to the rights and duties of creditor and sureties in cases of default where the claim will be extinguished if not presented for allowance. But the question presented is not one arising directly between the Trust Company as creditor of Enright's estate and the orators as sureties on Enright's bond. The question is raised by the defendant Savings Bank, and relates to the relative rights of the bank and the sureties growing out of the bank's surrender of its notes and collateral in exchange for the money of the Pike estate. It was with reference to these conditions that the Court said that the right of the sureties to rely on the action or non-action of the Trust Company was not less than that of the bank. So far as this claim is based on an affidavit filed in support of the motion, it will be left for later consideration.

The defendant urges the Court to reconsider its conclusion expressed in the opinion as follows: ''The test of liability is not the procurement of a benefit by the bank, but the infliction of a loss upon the fund.'' Referring to our adoption of certain language used by Lord Westbury in *Fray* v. *Johnson*, the defendant directs our attention to another part of the opinion where the facts are stated, and urges that the case supports its contention. The manner in which our quotation from this opinion was introduced was intended to indicate that it was not a presentation of the case as an authority, but an adoption of language deemed suited to the writer's purpose. It is said that if the infliction of a loss upon the fund is made the test, a bank would be liable if it honored the depositor's check drawn in payment of a debt to a third party, with knowledge that it was such a payment; and that the cases cannot be construed as going thus far. Our opinion certainly cannot be construed as going thus far, for it is expressly confined to cases where the bank accepts the money in payment of its own claim with knowledge that the money belongs to a trust. It seems to be feared that the logical effect of this holding will require the court to go further, and hold that the bank must see to it that the fund is not lost by misappropriation. The two grounds of liability are carefully distinguished in the opinion, and some courts have enforced one rule without feeling compelled to adopt the other.

The defendant urges a reconsideration of the case on the further ground that the Court has misapplied the rule that a bank is chargeable with the knowledge of such agents as its teller and bookkeeper. It is said that the rule would clearly be applicable if the bank had profited by Enright's payment of his notes, but that when the element of gain or profit to the bank is wanting, the knowledge of such an agent cannot be imputed to the bank. This is a repetition of the original assumption of counsel, that a bank cannot be said to be benefited by the payment of a demand secured by collaterals which afterwards proved to be adequate. We cannot accede to the proposition that the liability of a bank which has wrongfully accepted trust funds in payment of its claim, with resultant loss to the trust, can defeat the claim of the beneficial owner by saying that in accepting his property in payment it released other property of equal value.

The affidavit before referred to is that of the director of the defendant Trust Company who had charge of the Pike estate claim. This states in substance that the affiant frequently inquired of the administrators of Enright's estate, who are orators herein, as to the prospect of a payment in full, and was repeatedly told by them from time to time until 1910 that the estate would pay in full; and that this was one of the reasons for the Trust Company's delay in proceeding against the orators. The moving defendant asks that this matter be brought into the case by an amendment to the answers of both defendants, and that such amendments be permitted in this Court, or that the case be remanded with permission to so answer in the court below. Motions for amendments introducing new issues of fact are not usually disposed of in this Court. The claim presented by the affidavit is a matter within the cognizance of the court of chancery on a remand of the case.

Upon full consideration of the argument submitted in support of the motion we think a rehearing is unnecessary.

*Motion overruled and order of stay of entry vacated.*