REUBEN EVARTS, appellant, v. WM. NASON's ESTATE, appellee.

The statute of limitations does not operate, as between a trustee and his *ces tui que trust*, to bar a trust claim.

Payment may be presumed from lapse of time; but when the payment is disproved, the mere lapse of time is no bar to an action.

If a fraudulent judgment is obtained against an estate of which N. and E. are co-executors, through the fraud of N., combining with the plaintiff, and without the privity of the other executor, such other executor is entitled to an allowance of such sum as he shall have reasonably expended in time and money, in procuring an injunction on such judgment.

The fact that an executor or administrator may have charged a gross sum in his account for personal services, furnishes no legal reason why the charge should be rejected *in toto*.

As a general rule, the allowance of interest by the court, as incident to the debt, must be founded upon the agreement of the party, expressed or implied; though there are many cases where a jury may allow interest as a part of the damages, where no contract to pay it can be implied.

The general policy of the law is adverse to the allowance of interest, either to an agent or trustee, for advances made; and it should not be allowed an executor in a case where funds of the estate, amply sufficient to meet all claims of the executor, might have been subject to his control; and in a case attended with special circumstances.

APPEAL from a decree of the probate court for the district of Georgia, upon the allowance of the following account:

William Nason's estate, to Reuben Evarts,            Dr.

| | | | |
|---|---|---|---:|
| 1810 No. | 1 | To journey from Highgate, undertaking executorship, procuring bail, &c - - - - - - - - - - | $4,00 |
| | " 2 | Expenses same time - - - - - | 1,50 |
| | " 3 | Four days spent on said estate the winter following - - - - - - | 8,00 |
| | " 4 | Expenses same time - - - - - | 2,00 |
| 1812 | " 5 | Three days with S. Waterman posting books - - - - - - - - | 6,00 |
| | " 6 | Expenses same time - - - - - | 2,00 |
| 1813 | " 7 | Four days on said business - - - | 8,00 |
| | " 8 | Expenses same time - - - - - | 3,00 |
| | " 9 | Three days settling accounts - - - | 6,00 |
| | " 10 | Expenses same time - - - - - | 2,50 |
| | | Interest on above - - - - - - | 59,34 |
| | " 11 | Paid Royce & Hunt's acc't in suit, administrator of W. N. Ryan v. Na- | |

Franklin,
January,
1839.

Evarts
v.
Nason's Es-
tate.

|  |  |  |
|---|---|---|
|  | son and myself - - - - - - | 85,00 |
| No. 12 | Paid S. Royce for do. - - - - - | 5,00 |
| " 13 | Paid B. Turner for drawing bill against Smalley, *et al.* and getting it signed | 14,00 |
| " 14 | Paid B. Turner in do. - - - - - | 5,00 |
| " 15 | Paid do. attending suit Royce & Hunt *v.* myself - - - - (abandoned) | 4,00 |
| " 16 | Paid Hunt & Beardsley's account in the suit at law and chancery - - | 355,89 |
| " 17 | To my own time and expenses in and about said suits in relation to said estate not before charged - - - | 300,00 |
| " 18 | Paid Jas. Clark's bill of costs in chancery suit, as per decree - - - | 50,00 |

The facts in the case sufficiently appear in the opinion of the court, delivered by

BENNETT, J.—This case comes before this court by an appeal from the court of probate, and, upon the facts specially reported by the commissioner, several important questions arise upon the allowance of the plaintiff's account.

The first class of items is contained in the first ten charges in the account, inclusive, amounting to $43. It seems Wm. Nason died in 1810, testate, and John Nason and the plaintiff were made the executors of his will, and that this portion of the account is for the personal services of the plaintiff, as such executor, in and about the business of the estate, and for his expenses while attending to it. The commissioner reports that these items are truly charged, and that they have never been paid, and that the same should be allowed the plaintiff, unless barred by the statute of limitations, or unless payment is to be presumed from lapse of time.

The principle of law is well settled, that the statute of limitations does not apply, as between a trustee and his *cestui que trust*, to bar a trust claim.

The plaintiff's claim, in this respect, arises out of services rendered by him in the performance of a trust, conferred upon him as executor, and against the estate which he, as one of the executors, represents, and the assets of which he, as trustee, is entitled to hold for the discharge of every legitimate purpose of the trust. There is no principle to warrant the application of the statute to a case like this. Payment in

many cases is presumed from lapse of time, but only in those cases where there there is no evidence to rebut the presumption.

If the fact, to wit, the payment, which is attempted to be established from the lapse of time, is disproved, most clearly, lapse of time is no bar; and in this case, the commissioner expressly finds that the account has never been paid. There is, then, no good reason why this part of the account should not be allowed. As to the items of the account from Nos. 11 to 16, inclusive, except the 15th, they stand on a different ground. It seems Daniel Ryan died in 1810, testate, giving his property to his wife and children, appointing David Edmond, John Curtis, and John Nason his executors, and Wm. Nason signed the administration bond, as their surety. William Nason died the same year, leaving a widow and children, to whom he willed his property, and made John Nason residuary devisee, and appointed the said John Nason and the plaintiff his executors. Edmonds and Curtis died, and John Nason became the surviving executor of Daniel Ryan; and in March 1826 William N. Ryan, son of Daniel Ryan, commenced a suit against John Nason and the plaintiff, as the executors of Wm. Nason, upon their bond, claiming as legatee under the will of his father. The suit having been entered, and the said Wm. N. Ryan having died, his administrator, at the April term of the county court 1830, recovered judgment on the bond for $5,000, and excution was issued against them as executors on the estate of John Nason, and returned *nulla bona*, and a *scire facias* issued against them to show cause why execution should not go against their own proper goods and chattels. While the scire facias was pending, a bill in chancery was brought by John Nason and the plaintiff to enjoin the judgment. It is reported by the commissioner, that the items numbered 11, 12, 13, 14, 16 and 17, were for monies paid and services performed by the said Evarts in defending and prosecuting the aforesaid suits, and were reasonable charges, except No. 17, for personal services, which should be reduced to $150. It is important, in considering this claim, to keep in mind that the original judgment, in favor of the representatives of Wm. N. Ryan, against John Nason and the present plaintiff, on the probate bond, was rendered in pursuance of an agreement

entered into between the said John Nason and Ira A. Van Duzee, who had married the widow of Wm. N. Ryan, and had been appointed guardian of the only child of said Wm. N. Ryan. John Nason stands as the only surviving executor of Daniel Ryan, and a principal in the bond in suit, and also one of the executors of. Wm. Nason, in which capacity he was defendant in the suit.

The substance of this agreement was, that judgment should be entered in the said suit for $5000, and that the execution should be levied on a particular portion of the home farm of Wm. Nason, which was particularly described in the agreement, and that the residue of the judgment should remain under the control of said John Nason, to be levied on the residue of the home farm of Wm. Nason, if the said John should direct; and, in that case, the same should be held in trust for such persons as the said John should appoint. The commissioner reports that the plaintiff had no knowledge of this agreement till some time after the rendition of the judgment on the probate bond. At the term of the supreme court, 1836, the representatives of Wm. N. Ryan were perpetually enjoined against proceeding on said judgment at law, either against the said John Nason and Reuben Evarts, or against the estate of William Nason, or any persons interested therein. See 7 Vermont Reports, 118. This decree is based upon the ground that the act of John Nason, in procuring a judgment to be entered up upon the bond, was not only a fraud upon his co-executor, the said Evarts, but also on the estate of Wm. Nason. The question now before us is not whether there are any of the assets of Wm. Nason remaining in the hands of his executors, out of which this claim can be paid, if allowed, nor whether the estate can be pursued in the hands of the devisees, or *bona fide* purchasers; but, simply, whether this claim should be allowed the plaintiff, irrespective of the means of satisfying it. The great objection to the allowance of this account is, that these items arose out of the fraudulent conduct of John Nason, the co-executor, and that the proceedings in chancery were designed for the personal relief of the plaintiff. It may be true that the estate of Wm. Nason and the personal interests of the plaintiff may be involved in difficulty, arising out of the judgment, and this from the fraud of John Nason; but does it follow that the other co-executor is remediless? When he found that this

large judgment had been fraudulently obtained against the estate, it was his duty to make every reasonable effort to prevent this judgment from being kept on foot as the basis of a claim against the estate of Wm. Nason, either in the hands of the devisees, or *bona fide* purchasers, or against the sureties of the plaintiff, as executor. It is a common principle, that one executor is not liable for the *devastavit* of his co-executor, except in cases where he once had the control or possession of the funds wasted ; and, in this case, the commissioner finds that the plaintiff had no knowledge of the fraudulent agreement of his co-executor till some time after the judgment was entered up. There is no principle of law or justice, that will render Evarts liable for this fraudulent act of Nason. There is no pretence but that Evarts acted in good faith in this business. When he found a large judgment against the estate, a return of *nulla bona* on the execution, and himself pressed with a *scire facias*, he was justified in his resort to chancery to suspend further proceedings. The estate of Wm. Nason has had the full benefit of these proceedings.— The party was perpetually enjoined from making that judgment the ground of claim against the estate of Wm. Nason, or any devisee under the will, or *bona fide* purchasers ; and the fact, that Evarts was quieted also in his fears of being personally pressed with that judgment, is no good reason why these items of the account should not be allowed.

There was a special confidence reposed by the testator in John Nason, as well as in Evarts, and if the estate is embarrassed by a breach of this confidence on the part of Nason, it is much more reasonable that the estate should bear the expense of obtaining relief than that it should fall on the co-executor. But it is said, in argument, that John Nason and Evarts gave a *joint* bond to the probate court for their faithful administration of the estate of Wm. Nason according to the provisions of the will, and that if Evarts recovers, out of the estate, this account, the estate, or those interested in it, can recover the same amount out of Evarts on the bond, and therefore he should not be permitted to recover in this action. It is a sufficient answer to this position, that the court will not, in this action, adjudicate the rights and liabilities

of the parties on the bond. Whether the condition of the bond is violated by this fraudulent conduct of John Nason; whether Evarts is liable for it on the bond, and to what ex- tent, and if so, whether he would be entitled to an indemnity from his co-executor, are questions that should not be decided thus collaterally. It is difficult to see how this fact can constitute a good bar to the plaintiff's claim.

The 17th item in the account, which is charged in the gross sum of $300 "for time and expenses not before charged," is objected to on the ground of the general character of the charge; and the question for us to decide is, whether this is a *legal* objection against the allowance of the item. The commissioner has reduced this charge to $150, and reports that the plaintiff is reasonably entitled to that sum, unless the manner in which the charge is made precludes him. It is difficult to see by what rule of law a charge is rendered illegal on account of its generality. It is altogether a question of fact, and there can be no doubt that it is the duty of the triers, before they allow gross charges, to require good and satisfactory proof of their justness, and more especially, in cases where items have been professedly kept. If there is uncertainty arising from the manner of keeping the account, in a case where items could well be kept, this should never be permitted to operate in a party's favor, but rather the reverse; and should be examined and allowed with great caution. It is to be presumed, in this case, that the commissioner had before him satisfactory evidence of the justness of this claim to the amount allowed by him; and, he being the sole trier of the facts, his finding is exclusive. In the case of *Hapgood* v. *Jennison et al.* 2 Vt. R. 300, a similar objection was made to an account, but it did not succeed. The 15th item having been abandoned, the 18th is the only remaining one for consideration. It seems James Clark had been made a party to the bill in chancery, and had been dismissed under a decree that he recover his costs; but these costs had not been taxed nor paid, and though Evarts and John Nason may be jointly liable for the costs to Clark, still, in this state of the facts, it is apparent that Evarts can make no legal claim against the estate for these costs, however it might be on payment of them.

The statutes, fixing the rate of interest, do not declare in

FRANKLIN,
January,
1839.

Evarts
v.
Nason's Es-
tate.

what cases it shall be taken, or that it shall, in any case, be paid. Their effect is to prohibit it from being taken above a given rate. Since, then, no one is required by either the common or statute law to pay interest, it would seem to follow, that the allowance of interest by the court, as incident to the debt, must be founded on the agreement of the party, expressed or implied. I do not intend to allude to that class of cases where interest is not a necessary incident to the debt, but still may be allowed by a jury under certain circumstances, as in trover, or trespass, and, in many actions, as a part of the damages.

In the case of *Rix* v. *Smith*, 8 Vt. R. 365, it was held that an administrator, advancing money in good faith for the estate, and being guilty of no neglect nor unreasonable delay in converting the effects of the estate into money, should be allowed interest on his advances; yet the general policy of the law is adverse to the allowance of interest, either to an agent or trustee, for advances made. 2 Eq. Cas. abridged, 531. pl. 15.

In *Storrer* v. *Storrer*, 9 Mass. R. 37, interest was disallowed to an administrator on moneys he had advanced beyond the funds in his hands belonging to the estate. In the case before the court, there were at all times funds belonging to the estate, amply sufficient to meet every needful expense, which might have been subject to the control of the plaintiff; and, under the special circumstances of the case, we think interest should not be allowed on any part of this account. Judgment must, therefore, be entered up on the report for $657,89, instead of the sum reported by the commissioner.

*H. R. Beardsley* and *S. S. Brown*, for appellant.

*Smalley & Adams*, for appellees.

ROYCE, J. having been of counsel in this case, did not sit.

COLLAMER, J. dissented.