Filed Sept. 16, 1891.

---

No. 15,180.

## SPAULDING *v.* HARVEY ET AL.

SUBROGATION.— *Void Mortgage.—Judgment.—Payment of by Mortgagees.*—A husband and wife, who were under guardianship, falsely represented that the guardianship had been terminated, and that they had been adjudged of sound mind, and they induced a firm of attorneys to accept a mortgage on the undivided interest of the wife in certain real estate, to secure the compensation agreed upon for legal services to be rendered. Prior to the date of the guardianship a judgment had been rendered against the wife, which was a lien upon her interest in the real estate mortgaged as aforesaid.

*Held,* that the mortgage was void by reason of the legal incapacity of the mortgagors to execute the same.

*Held,* also, that the attorneys, having paid off the judgment rendered against the wife to protect what they erroneously supposed was a valid mortgage, were entitled to be subrogated to the lien of said judgment, with priority over a judgment rendered in favor of the guardian for services, etc.

SAME.—*Right of.— Upon what Depends.*—The right of a creditor to be subrogated to the securities of one whose claim he has paid, does not depend upon the solvency or insolvency of the debtor, but upon the circumstances attending the payment of the debt, to which the security was an incident.

SAME.—The right of subrogation does not depend upon or grow out of the ability of the parties to make valid contracts, as it is not founded upon contract, either express or implied, but upon principles of equity and justice, intended to afford protection to a meritorious creditor, and prevent the sweeping away of the fund, from which, in good conscience, he ought to be paid.

From the Grant Circuit Court.

*A. E. Steele* and *J. A. Kersey,* for appellant.

*G. W. Harvey* and *H. J. Paulus,* for appellees.

McBRIDE, J.—November 28th, 1886, Almaretta Lockwood, one of the appellees herein, was the owner of an undivided interest in certain land in Grant county. On that day one Josiah Ferguson recovered a judgment in the Grant Circuit Court against her for $30 and costs, which became a lien on her interest in the land. December 28th, 1886, she, with her husband and co-appellee James H. Lockwood, were, by the Wells Circuit Court, adjudged of unsound mind, and incapable of managing their respective estates, and the appellant was duly appointed their guardian.

The guardianship was terminated by a judgment of the Wells Circuit Court, on the — day of April, 1887, declaring them restored to their right minds, and again capable of managing their estates. On the 26th day of January, 1887, the Lockwoods applied to the appellees, Harvey and Paulus, to act as their attorneys in the institution and conduct of certain litigation, and represented to them that they had been already adjudged of sound mind, and their guardianship terminated. Harvey and Paulus, not knowing that this was untrue, accepted and entered upon the duties of the employment, and, to secure the compensation agreed upon, took from the Lockwoods a mortgage on the land in Grant county. On the day the mortgage was executed the land was advertised for sale by the sheriff of Grant county, on an execution issued on the Ferguson judgment.

Harvey and Paulus, to save the land from sale, and thereby protect their mortgage, paid to the sheriff $48.43, the amount of the judgment, with costs. This suit was originally commenced to foreclose the mortgage, but the Lockwoods and the appellant, who was joined as a defendant, attacked the validity of the mortgage, on the ground of the incapacity of the mortgagors when it was executed. The appellant, also, by a separate answer, which was supported on the trial by proof, showed that when he was discharged as guardian the Wells Circuit Court allowed him, for services, money expended, etc., $373.78, which the court adjudged to be a spe-

cific lien on the mortgaged land, and that a transcript of the judgment had been duly filed and recorded in the clerk's office of Grant county.

Harvey and Paulus thereupon, with leave of the court, and without objection from the defendants, filed a second paragraph of complaint, alleging the facts substantially as above stated, and asking to be subrogated to the lien of the Ferguson judgment. This paragraph also contained averments charging that the representations made by the Lockwoods to Harvey and Paulus, that they had been adjudged of sound mind and relieved from guardianship, were not only false, but were fraudulently made to induce them to act as such attorneys and accept said mortgage. The circuit court found these averments to be true, and adjudged the mortgage void, but sustained the claim of Harvey and Paulus to be subrogated to the lien of the Ferguson judgment, with priority over the judgment of the appellant.

This conclusion of the court is vigorously attacked by the appellant, who insists that the mortgage being void, and the mortgagors incapable of contracting, the payment by the appellees of the Ferguson judgment was voluntary, and by persons standing in the relation of strangers to the debtors, and will not entitle them to subrogation.

In this the appellant is wrong, and the judgment of the circuit court is right. True, the mortgage was void, because the mortgagors were, by the express terms of the statute, legally incapacitated from contracting. One may, however, be so weak intellectually as to be incapable of managing his estate, and thus be legally subjected to guardianship, and still be capable of perpetrating a fraud.

The court has found in this case that these parties, by means of the representations made, not only secured the services of the appellees, as attorneys, but also induced them to save their land from sale by the sheriff by paying the Ferguson judgment. It is certain that they obtained a substantial benefit. To sustain their present claim would be to re-

lieve them wholly from liability for the Ferguson judgment, without having rendered any equivalent whatever therefor.

The statute which provides for the guardianship of those *non compos*, and for the conservation of their estates, is intended to protect them from the consequences of their mental weakness, and to guard against the danger of wrong being done to them by the dishonest and the unscrupulous. It was never intended to serve as an intrenchment to shelter them from the consequences of such wrongs as their limited capacity gave them the power to knowingly perpetrate upon others.

Indeed, if no question of fraud, or of attempted fraud, entered into the transaction, it is a clear case calling for the application of the doctrine of subrogation, which does not depend upon or grow out of the ability of the parties to make valid contracts, as it is not founded upon contract, either express or implied, but upon principles of equity and justice, intended to afford protection to a meritorious creditor, and prevent the sweeping away of the fund from which, in good conscience, he ought to be paid. Sheldon Subrogation, section 4; 3 Pom. Eq. Jur., section 1419; *Rooker* v. *Benson*, 83 Ind. 250.

Assume that the mortgagors as well as the mortgagees acted in good faith, when the mortgagees, to protect what they erroneously supposed was a valid mortgage, paid the judgment, they were neither strangers nor volunteers. The fact that the mortgage proved to be void because the makers had not the legal power to make it, affords only stronger reasons why the equitable doctrine of subrogation should be invoked.

The second paragraph of the complaint, asking for subrogation, did not contain any averments of the insolvency of the debtors, or that they had no other property out of which the claim could be collected. Appellant demurred to this paragraph, on the ground that it did not state facts sufficient to constitute a cause of action, and the demurrer be-

ing overruled, an exception was saved to the ruling. This ruling is assigned as error, appellant insisting that the omission of such averments, or their equivalent, makes the complaint bad. The question in this case is as to the preservation of a security in favor of a creditor.

The right of a creditor to be subrogated to the securities of one whose claim he has paid does not depend upon the solvency or the insolvency of the debtor, but upon the circumstances attending the payment of the debt to which the security was an incident.

Judgment affirmed, with costs.

Filed Sept. 19, 1891.