ADGELION K. HALL *v.* WINDSOR SAVINGS BANK.

February Term, 1923.

Present: WATSON, C. J., POWERS, TAYLOR, SLACK, and BUTLER, JJ.

Opinion filed June 2, 1923.

*Subrogation An Equitable Doctrine—How the Right of Subrogation May Arise—Right of Surety to Subrogation—Trusts—Beneficiary May Sue to Protect His Rights When Trustee Implicated in Wrong—Surety Need Not Exhaust Remedies · Against Principal Before Seeking Benefits of Subrogation—Right of Subrogation Not Affected by Another's Conduct—Defenses of Limitations and Laches—How Raised—Limitations of Actions—When Statute Begins to Run—Trustee Ex Maleficio—Harmless Error—Subrogation Not Dependent Upon Solvency or Insolvency of Debtor—Notice of Trust by Use of Word "Executor" After Name of Payee in Check—Inadequate Briefing—Reporting Evidence on Which Findings Made, Discretionary with Chancellor—Evidence—Admissibility of Executor's Personal Note and Bank Memoranda in Suit by The Executor's Surety Against Bank for Funds Misappropriated—Nature of Executor's Authority, Powers, and Duties—When Executor May Discharge Obligation of Unauthorized Contract With Funds of Estate—Purchase of Real Estate Without Authority—Right of Administrator of a Residuary Legatee to Compel Restitution of Funds Misappropriated by Executor—Executor's Surety Entitled to Subrogation—Effect of Knowledge, by Administrator of Residuary*

*Legatee, of Executor's Default, on Surety's Right to Subrogation—Administrator or Executor A Technical Trustee—· Statute of Limitations Inapplicable During Continuance of Trust—Effect of Executor's Settlement of Account on Trust Relation—When Statute of Limitations Inapplicable to Trustee Ex Maleficio—Defaulting Executor and Bank Receiving Mala Fide Funds Misappropriated Are Joint Tort Feasors.*

1. The doctrine of subrogation is highly equitable in character, and is regarded as one of the "benevolences of the law," created, fostered, and applied in the interests and for the promotion of natural justice.

2. Subrogation may arise independent of any contract between the parties to be affected by it, and in such cases does not depend upon privity between them.

3. The right of subrogation is not confined to the ordinary relation of principal and surety, but arises whenever, in the complex relations of business affairs, one man is compelled to pay a debt for which another is primarily liable and which, in equity and good conscience, should have been discharged by the latter.

4. Where a widow, had she survived the decree of distribution of her husband's estate, could have prosecuted the bond given by the executor and recovered the amount to which she was entitled under the decree, such right, upon her decease, passed to her personal representatives.

5. By suing on an executor's bond, under G. L. 3509, an administrator *de bonis non* of the testator's widow, appointed after the executor's defalcation, did not waive the right, given to such widow by G. L. 3424, to demand and receive the estate decreed to her from any other person having same in his possession, and a surety, lawfully required to pay such legacy, by subrogation has the same right.

6. Where the surety of a fiduciary is compelled to answer for the latter's breach of trust, he succeeds to the rights of both the fiduciary and the *cestui que trust*.

7. Equity has jurisdiction of a suit to recover trust funds held unlawfully.

8. Whenever a trustee refuses to take measures to protect or recover the trust property or is implicated in the wrong to be

redressed, the *cestui que trust* may sue in equity to protect his rights.

9. Generally, a surety is not bound to exhaust his remedies against the principal before seeking the benefits of subrogation, and his right accrues upon payment; but this right, being equitable, is subject to the rules of equity, and where the equities so require he may, in exceptional cases, be compelled to first proceed against the principal.

10. While the right of subrogation may be lost by waiver or estoppel, the right, being personal, is unaffected by the conduct of another.

11. The right of subrogation is subject to the defenses of limitations and laches.

12. The defense of limitations may be raised by demurrer, if the facts appear on the face of the bill.

13. The defense of laches must be specially pleaded, otherwise it will not be considered.

14. Where the surety on an executor's bond, after the defalcation of the executor, was compelled to pay certain of his obligations to the administrator *de bonis non* of a legatee, the right of subrogation to the administrator's rights did not arise until such payment, and limitations began to run from that date.

15. The general rule that whatever will bar action by a trustee will also bar one by the *cestui que trust* does not apply when a trustee unites with another in a breach of the trust; and in an action by a defaulting executor's surety against one who knowingly participated with the executor in the misapplication of trust funds, whereby such defendant became a trustee *ex maleficio*, the statute of limitations did not begin to run against the right of the *cestui que trust* to which the surety was subrogated, until the *cestui* knew, or in the circumstances ought to have known, of the breach of trust.

16. Where a finding, excepted to for lack of evidence warranting it, can be rejected without affecting the result, the exception is unavailing.

17. The right of subrogation does not depend upon the solvency or insolvency of the person whose debt has been paid, but arises wholly from the circumstances attending such payment.

18. A finding that a bank took the avails of trust deposits with notice of their character *held* supported by the evidence.

19. The addition of the word "Executor," or its abbreviation, "Exr.," to the name of the payee of a check was enough to charge a bank, to which it was delivered and which received the proceeds thereof, with notice that the funds belonged to some estate of which the payee was executor, and that they were trust funds and not private funds.

20. Where the excepting party's brief said nothing more regarding exceptions to the refusal of the court to make certain findings, than that such requested findings were for "essential facts bearing on the legal question of notice to the bank," and several were not of that character, the briefing was inadequate.

21. Requests for findings which seek to have the chancellor report the evidence on which certain material findings were made are addressed to the chancellor's discretion, and it was not error for him to refuse them.

22. Where a bank had received funds misappropriated by an executor and applied same on his personal indebtedness to the bank, in an action by the executor's surety, who had been compelled to pay the amount of the defalcation, to recover such sum from the bank, the executor's note, and bank card in reference thereto containing certain memoranda in the nature of material admissions, were admissible, subject to explanation, the evidence to be given such weight as the chancellor deemed proper.

23. In an action by the surety of a defaulting executor against a bank which had received the misappropriated funds and credited them on the executor's personal indebtedness to it, evidence that the note so paid had been given by the executor to raise money to purchase certain property for the estate *held* inadmissible, in view of the final account rendered by the executor, in which neither the note nor property claimed to have been purchased for the estate was listed, and of other circumstances in the case, the attempt to purchase in the circumstances amounting to a devastavit by the executor for which his bondsmen would be liable unless they could show the estate had the benefit of it.

24. Such evidence was not admissible on the theory that no misappropriation was shown and no loss sustained because the property was bought for and belonged to the estate and was worth the amount paid for it, the loss occuring 18 months later when

the executor sold the property and converted the proceeds, for the reason that by the decree of probate court the executor only had power to pay over the funds in question to the executor of the residuary legatee, hence he had no right to purchase the property for the estate and it never became the property of the estate.

25. An executor is a representative of limited authority, and his duties are to collect the assets of the estate, pay its debts, and distribute the residue to those entitled thereto, his powers being only those delegated to him by the will and statute, with no implied powers except such as are necessarily incidental to those so conferred.

26. When an executor makes a contract beyond the powers expressly given him by will or statute, or necessarily implied therefrom, though made in the name and for the benefit of the estate, he alone is bound.

27. If an executor attempts to pledge the credit of the estate in a contract beyond his powers, his right to discharge the obligation out of estate funds depends upon its being so beneficial to the estate as to receive the sanction of the probate court.

28. An administrator cannot, nor can an executor without authority given by the will, purchase real estate.

29. Where an executor misappropriated the funds of an estate, which the probate court had decreed to the residuary legatee, by paying them to a bank to be applied on the executor's personal indebtedness to the bank, the latter participating in the misappropriation, the administrator of the residuary legatee had the right to proceed in equity against the bank to compel restitution.

30. The surety on such executor's bond, having been compelled to pay the amount of the latter's defalcation, became subrogated to the rights which the administer of the residuary legatee had, so far as necessary to secure reimbursement, including the right to follow the trust property into the hands of a purchaser with notice, and to proceed against a third person participating in a breach of the trust of his principal.

31. Where an executor misappropriated funds of an estate, which the probate court had decreed to the residuary legatee, by paying them to a bank to be applied on the executor's indebtedness to it, and the surety on the executor's bond was compelled to pay the amount, the action of the surety against the bank

was not barred by the fact that the administrator of the residuary legatee, when suing on such bond, knew that the executor was in default, it not appearing that the administrator knew of this particular misappropriation or that the defendant took the assets of the estate in circumstances making it liable for their recovery.

32. An administrator or executor is a technical trustee.

33. As between a trustee and *cestui que trust*, the statute of limitations does not apply to bar a trust claim so long as the trust continues.

34. As the fact that an executor settles his account does not change his relation to the funds of the estate so long as he holds the funds as trustee, until he repudiates the trust and knowledge thereof is brought home to the *cestui que trust* the statute of limitations does not begin to run.

35. Where funds, misappropriated by an executor, were received by a bank *mala fide*, so that the bank thereby became a trustee, *ex maleficio*, the bank could not set up the statute as a bar to the right of the *cestui que trust* or one who had become subrogated thereto, to recover from it the amount so received.

36. Where an executor misappropriated funds of an estate by paying them to a bank to be applied on his indebtedness to it, the funds being received by the bank, *mala fide*, the executor and the bank are joint tort-feasors, and as such each was equally culpable and amenable, there being no primary and secondary liability between the participants, hence a surety on the executor's bond, who has been compelled to pay the amount of the defalcation, need not exhaust his remedies against the executor's estate before proceeding against the bank.

APPEAL IN CHANCERY. Heard on bill, demurrer, answer, and facts found by the chancellor, at the June Term, 1922, Windsor County, *Fish,* Chancellor. Demurrer overruled and decree for plaintiff.. The defendant appealed. The opinion states the case. *Affirmed and remanded.*

*Marvelle C. Webber* for the defendant.

A surety has no claim against a person merely because the latter has received money or property from the principal. 32

Cyc. 251; *Brown* v. *Houck,* 41 Hun. 16; *Cureton* v. *Moore,* 55 N. C. 204; *Crafts* v. *Tritton,* 2 Moore C. P. 411; *Hoffman* v. *Schwabe,* 33 Barb. (N. Y.) 194.

To make such person liable, he must have been a party to the breach of trust and participated in it.   12 A. L. R., annotation p. 1048; 25 R. C. L., pp. 1332-1333; 13 Ann. Cas. 430; *Hale* v. *Windsor Savings Bank,* 90 Vt. 487; *Allen* v. *Puritan Trust Co.,* 211 Mass. 409, L. R. A. 1915C, 518.

The fiduciary's liability is absolute, but the liability of the third party is conditional.   *Northern Trust Co.* v. *Consolidated Elevator Co.,* 142 Minn. 132, 4 A. L. R. 510; R. C. L. 3 Supp., p. 1453.

*Stickney, Sargent & Skeels* for the plaintiff.

The surety paying off a debt stands in the place of the creditor and has all the rights which he has, for the purpose of obtaining reimbursement.   Sheldon on Subrogation, § 89; *Hodgson* v. *Shaw,* 3 Myl. & K. 190; *Scott* v. *Patchin,* 54 Vt. 265; *Hale* v. *Windsor Savings Bank,* 90 Vt. 487; *Lidderdale* v. *Robinson,* 2 Brock, 159, 15 Fed. Cas. 402.

Subrogation extends not only to securities but also to all remedies of the creditor.   25 R. C. L. 1332; *Am. Bonding Co.* v. *Nat. Mechanics' Bank,* 97 Md. 598, 99 A. S. R. 466; *Nat. Surety Co.* v. *State Sav. Bank,* 156 Fed. 21, 13 Ann. Cas. 421; *U. S. Fidelity Co.* v. *Adoue,* 104 Tex. 379, Ann. Cas. 1914B, 677; *Lumpkin* v. *Mills,* 4 Ga. 349; *Clark* v. *First Nat. Bank,* 57 Mo. App. 277; *Pierce* v. *Holzer,* 65 Mich. 263; *Blake* v. *Traders' Nat. Bank,* 145 Mass. 13.

Where trust funds are diverted by a trustee to pay an individual debt under circumstances that the payee has actual or constructive notice of the diversion the *cestui que trust* may maintain a suit in equity to trace and recover the funds.   *Hale* v. *Windsor Savings Bank,* 90 Vt. 487; *Shaw* v. *Spencer,* 100 Mass. 382; *Allen* v. *Puritan Trust Co.,* 211 Mass. 409; *Van Allen* v. *American Nat. Bank,* 52 N. Y. 1; *Cohnfeld* v. *Taunenbaum,* 176 N. Y. 126, 98 A. S. R. 653; *Powell* v. *Freeport Bank,* 193 N. Y. S. 100.

Trustees and guardians are not permitted to change personal estate into real estate or buy land, without authority from the trust instrument or decree of court.   2 Kent. p. 230; 2 Perry

on Trusts, § 606; Loring on Trusts, § 109; *Earl of Winchelsea* v. *Norcliffe,* 1 Vern. 434; *Ashburton* v. *Ashburton,* 6 Vesey 6; *In re Salisbury,* 3 Johns. Ch. 348; *Empire State Surety Co.* v. *Cohen,* 156 N. Y. S. 935; *Lockman* v. *Reilly,* 95 N. Y. 71; *Bowman* v. *Pinkham,* 71 Me. 295; Bonsall's Appeal, 1 Rawle, 274; *Kaufman* v. *Crawford,* 9 Wat. & Sar. 131, 42 A. D. 323; *Corker* v. *Jones,* 110 U. S. 317, 28 L. ed. 161; G. L. 3491.

POWERS, J.    On August 1, 1900, Joseph C. Enright qualified as executor of the will of Henry L. Story, deceased, by filing a bond on which the plaintiff was surety.    By the terms of the will, Sarah W. Story, widow of the testator, was the residuary legatee.    She died before her husband's estate was settled, leaving a will of which Enright was the executor.    On November 30, 1903, the probate court for the district of Windsor, in which both estates were in process of settlement, passed upon and approved the final account of Enright as executor of the Henry L. Story estate, found in his hands in cash, notes, and deposits, the sum of $8,473.72, and made a decree ordering him to pay that sum to himself as executor of Sarah W. Story's estate, according to the terms of Mr. Story's will.    This order was never complied with.

At the time this decree was made, the assets of the Henry L. Story estate included a deposit in the defendant bank of $1,587.72, another in the Springfield Savings Bank of $1,346.12, and a third in the Bellows Falls Savings Institution of $821.12. The first-named deposit stood in the name of Henry L. Story; and on January 1, 1904, amounted, with interest, to $1,607.31. On that day, Enright withdrew it, receipting for it as executor, and the avails were then applied by the defendant on its note for $3,500.00 dated October 20, 1903, and signed by Enright, F. S. Hale, and E. R. Buck.    The deposit in the Springfield Savings Bank stood in the name of J. C. Enright, executor of Henry L. Story's estate, and on January 1, 1904, amounted to $1,368.87.    On that day, Enright withdrew the deposit by giving the treasurer of the bank an order signed by the former as executor of Henry L. Story's estate, and receiving a treasurer's check for the amount stated drawn to himself, as executor.    On the following day, Enright indorsed this check as drawn, delivered it to the defendant, and its treasurer applied it on the $3,500 note above referred to.

The Bellows Falls deposit also stood in the name of J. C. Enright, executor of H. L. Story's estate. On July 1, 1904, it amounted to $828.25, and was withdrawn by an order made out by the defendant's treasurer, A. W. Harris, and signed "J. C. Enright, executor of H. L. Story's Est.," and indorsed "For remittance to Windsor Savings Bank, A. W. Harris, Treasurer." Thereupon, a cashier's check for the amount named was issued by the Bellows Falls Institution and sent to the defendant. This was applied by the defendant on its note against Enright for the sum of $2,800, as security for which the deposit had been hypothecated by Enright.

On April 8, 1910, Gilbert A. Davis, having been appointed administrator *de bonis non* of the estate of Sarah W. Story, and having qualified as such, by the leave and in the name of the probate court aforesaid, brought an action against the plaintiff on the bond above referred to, and therein recovered a judgment amounting to $4,884.49, which the plaintiff paid on May 25, 1912. This suit is in equity and is predicated on the theory that by such payment the plaintiff became subrogated to such rights against the defendant Savings Bank as will enable him here to recover of it so much of these misappropriated deposits as may be required for his reimbursement.

The defendant filed an answer and embodied therein a demurrer, which was brought on for hearing before the trial before the chancellor began; it was overruled, and the benefit of the exception saved was reserved.

[1-3]  The demurrer was properly overruled. The doctrine of subrogation is much broader in its scope and application than the defendant admits. It is highly equitable in character, and is regarded as one of the "benevolences of the law," created, fostered, and applied in the interests and for the promotion of natural justice. It may arise independent of any contract between the parties to be affected by it, and in such cases does not depend upon privity between them. *Sands* v. *Durham,* 99 Va. 263, 38 S. E. 145, 54 L. R. A. 614, 86 A. S. R. 884; *National Bank* v. *Cushing,* 53 Vt. 321; *Amory* v. *Lowell,* 1 Allen (Mass.) 504; *Huffmand* v. *Bence,* 128 Ind. 137, 27 N. E. 347; *Memphis & Little Rock R. R. Co.* v. *Dow,* 120 U. S. 287, 30 L. ed. 595, 7 Sup. Ct. 482. The right is a favorite of the law, and the tendency is to extend rather than restrict its application. It is not confined

to the ordinary relation of principal and surety, but arises whenever, in the complex relations of business affairs, one man is compelled to pay a debt for which another is primarily liable and which, in equity and good conscience, should have been discharged by the latter. *National Bank v. Cushing, supra.*

[4-6]  The bond signed by the plaintiff was in the usual form and among other things secured the payment of the legacy to Mrs. Story.  Had she survived the decree of distribution of her husband's estate, she could have prosecuted the bond and recovered the amount to which she was entitled under the decree. *Probate Court v. Kimball,* 42 Vt. 320.  This right of hers passed to her executor and then to her administrator *de bonis non,* and is equally available to him.  G. L. 3509.  The plaintiff's liability and its amount were established in the proceedings instituted by Davis, and the plaintiff was compelled to pay the award therein.  The defendant admits that Hall was liable to the adminstrator of Sarah W. Story's estate, but denies that the latter had any remedy against the defendant; therefore, it argues, there is nothing for the plaintiff to be subrogated to.  This claim is unfounded.  By suing on the bond, the administrator did not waive the right to sue the defendant.  *Allen v. Puritan Trust Company,* 211 Mass. 409, 97 N. E. 916, L. R. A. 1915C, 518. Whenever an estate has been decreed to the person entitled to it, that person may demand and recover the same, not only from the executor or administrator, but from "any other person having the same in his possession."  This is a statutory right.  G. L. 3424.  It is not necessary, however, to appeal to the statute in order to escape so gross an injustice as would result if it were to be held that this surety, who has lawfully been required to pay, was without remedy against one who has wrongfully and knowingly misappropriated the estate.  Subrogation operates to save him.  It operates without regard to form or technicalities, and when the plaintiff was compelled to pay what Enright ought to have paid, he was subrogated, not only to Enright's rights against the defendant, but also to the rights which his *cestui que trust,* the Story estate, had against it.  Whenever the surety of a fiduciary is compelled to answer for the latter's breach of trust, he succeeds to the rights of both the fiduciary and the *cestui.* *Blake v. Trader's Nat. Bank,* 145 Mass. 13, 12 N. E. 414; *American Bonding Company v. National Mechanics' Bank,* 97 Md. 598,

55 Atl. 385, 99 A. S. R. 466; *Fox* v. *Alexander,* 36 N. C. 340; *Kennedy* v. *Pickens,* 38 N. C. 147; *United States Fidelity & Guaranty Co.* v. *Citizens' State Bank,* 36 N. D. 16, 161 N. W. 562, L. R. A. 1918E, 327; *Pierce* v. *Holzer,* 65 Mich. 263, 32 N. W. 431; *Farmers' and Traders' Bank* v. *Fidelity & Deposit Co.,* 108 Ky. 384, 56 S. W. 671, 22 Ky. Law. Rep. 22; *Pinckard* v. *Woods,* 8 Gratt. (49 Va.) 140; *Fidelity & Guaranty Co.* v. *Peoples' Bank,* 127 Tenn. 721, 157 S. W. 414. The fact that the plaintiff did not pay the debt to the principal's immediate creditor, Mr. Story's estate, does not affect his situation. He paid it to one who succeeded to it by the orderly processes of the law, and who could and did lawfully compel its payment.

What we have said regarding the defendant's liability presupposes, of course, that the defendant took the deposits with notice, actual or constructive, that they represented trust funds, —of which we shall speak further herein.

[7-8] That equity has jurisdiction in such cases is too well established to require discussion. *Wilder's Exrx.* v. *Wilder,* 75 Vt. 178, 53 Atl. 1072, 25 R. C. L. 1391. Nor is there anything in *Hale* v. *Windsor Savings Bank,* 90 Vt. 487, 98 Atl. 993, when rightly understood, to the contrary. And whenever a trustee refuses to take measures to protect or recover the trust property or is implicated in the wrong to be redressed, the *cestui* may sue in equity to protect his rights. *Zimmerman* v. *Makepeace,* 152 Ind. 199, 52 N. E. 992; *Weetjen* v. *Vibbard,* 5 Hun, 265; *Neal* v. *Bleckley,* 51 S. C. 506, 29 S. E. 249.

[9] But it is said that the surety must exhaust his remedy against the principal before he is entitled to subrogation, and that the bill in hand does not show that this plaintiff has proceeded against Enright's estate. It is alleged that Enright was insolvent when he died, and that of the amount misappropriated by him only about $3,300 could be and was recovered of his estate. From this it appears, inferentially at least, that the plaintiff or Davis had exhausted the remedies against Enright's estate when the bill was brought. Moreover, the law is not as the defendant claims. Speaking generally, the surety is not bound to exhaust his remedies against the principal before seeking the benefits of subrogation. His right accrues upon his payment. Being equitable, it is subject to the rules of equity. If one would have equity, he must do it; and if the equities of a

given case require that a surety should first proceed against the principal, the court to which he applies will mould its decree accordingly. But it is the rights of the creditor that he succeeds to, and a creditor is not ordinarily obliged to proceed against the principal before he can invoke his other remedies. He may, in exceptional cases, be compelled to do so. Under like circumstances, the surety seeking subrogation may be so compelled.

[10] The right of subrogation being enforced for the benefit of the person in whose favor it arises may be lost by a waiver or an estoppel. But being personal, it is unaffected by the conduct of another. So the plaintiff's right is wholly unaffected by Davis' choice to proceed against the plaintiff instead of against the defendant. · As we have seen, Davis did not thereby waive his right against the defendant. Much less could his choice bind or affect the plaintiff. These remedies were concurrent and not inconsistent. There was no more an election of remedies than is always the case when a creditor who holds collateral security for a debt gets partial satisfaction from a surety of the debtor. *Black* v. *Traders' National Bank, supra.*

[11-14] The right, too, is subject to the defenses of limitations and laches. These, however, are distinct defenses of materially different characteristics. *Wilder* v. *Wilder,* 82 Vt. 123, 72 Atl. 203. The former may be taken advantage of under a demurrer if the facts appear on the face of the bill, but the latter must be specially answered. *Ib.* The answer here does not set up the defense of laches and so it is not for consideration. The defense of limitations is covered by the answer and so is for consideration. *Sherman* v. *Windsor Mfg. Co.,* 57 Vt. 57. What appears on the face of the bill is this: The plaintiff paid the judgment on May 25, 1912; this bill was served on the defendant on May 24, 1916. The right of subrogation does not arise until the surety pays the debt. 37 Cyc. 374; *Ætna Life Ins. Co.* v. *Middleport,* 124 U. S. 534, 31 L. ed. 537, 8 Sup. Ct. 625; 25 R. C. L. 1315; *Elgin National Bank* v. *Goecke,* 295 Ill. 403, 129 N. E. 149; *Gawthrop Co.* v. *Fibre Specialty Co.,* 257 Pa. 349, 101 Atl. 760; *Jones* v. *Harris,* 90 Ark. 51, 117 S. W. 1077. So it does not appear that the statutory period has run.

[15] Nor can this defendant avail itself of the period of time that has elapsed since the misapplication. That the plain-

tiff acquires, by subrogation, no greater rights than the residuary legatee had, may be admitted. It may also be admitted that, as a general rule, whatever will bar an action by a trustee will also bar one by the *cestui*. But when a trustee unites with another in a breach of the trust, the latter rule does not apply. *Parker v. Hall*, 2 Head (Tenn.) 641; *Herron v. Marshall*, 5 Humph. (Tenn.) 443, 42 A. D. 444. When this defendant knowingly participated in the misapplication of the trust funds, it became a trustee *ex maleficio*. *Jackson v. Thomson*, 222 Pa. 232, 70 Atl. 1095; *Evans v. Moore*, 247 Ill. 60, 93 N. E. 118, 139 A. S. R. 302; Pom. Eq. 1048, *Case v. Goodman*, 250 Mo. 112, 156 S. W. 698. In the case of an express trust, the statute of limitations does not begin to run in favor of the trustee until he repudiates the trust and knowledge of this fact is brought home to the *cestui que trust*. *Reynolds v. Sumner*, 126 Ill. 58, 18 N. E. 334, 1 L. R. A. 327, 9 A. S. R. 523; *Allen v. Stewart*, 214 Mass. 109, 100 N. E. 1092. So, too, in the case of an implied trust, the statute does not begin to run in favor of the implied trustee and against the right of the *cestui*, until the latter knows, or in the circumstances ought to know of the facts that give rise to his cause of action. *Neal v. Bleckley*, 51 S. C. 506, 29 S. E. 249. As has been stated, Mrs. Story died before the misappropriation and there is nothing in the record to show that her administrator, Davis, knew the facts until they were developed in the suit brought against the plaintiff. Neither the administrator nor the plaintiff, so far as the findings go, learned the facts more than six years prior to the commencement of this suit.

[16, 17]  The defendant excepted to the finding that Enright was insolvent, and insists that there was no evidence warranting it. But the exception taken below was limited; it went only "so far as any inference may be drawn that he was insolvent at the time of the transaction between said Enright and defendant, Windsor Savings Bank." Thus limited, the exception involves a question of no importance. Whether Enright was solvent or not at that time does not, in view of the facts of the case, affect the defendant's liability; and this finding could be rejected without affecting the result. The exception is unavailing. *Platt v. Shields and Conant*, 96 Vt. 257, 119 Atl. 520. So far as the right of subrogation goes, it does not depend upon the solvency or insolvency of the person whose debt has been paid,

but arises wholly from the circumstances attending such payment. *Spaulding* v. *Harvey,* 129 Ind. 106, 28 N. E. 323, 13 L. R. A. 619, 28 A. S. R. 176.

An exception was also saved to the finding that the defendant took the avails of the deposits with notice.

[18]   So far as the deposit in the defendant's own bank is concerned, we need take but little time over this exception.   It fairly appeared that the defendant's treasurer had active charge and oversight of deposits and withdrawals.   He knew that this deposit stood in Story's name; knew that Enright withdrew it as · executor; he must have known that it was applied on Enright's note.   The cash book of the defendant showed the withdrawal and the application of the precise sum withdrawn.   This latter fact was evidence tending to establish the identity of the indorsement. *American Surety Co.* v. *Gaskill's Admr.,* 85 Vt. 358, 82 Atl. 218; *Story's Admr.* v. *Hall,* 86 Vt. 31, 83 Atl. 653, 40 L. R. A. (N. S.) 1136, Ann. Cas. 1915B, 1187.   It is argued that the withdrawal may have been made at one window and the payment made at another, so that the defendant's officers were deceived.   But there was no evidence to show this,—without which the inference drawn by the chancellor was fully warranted.

[19]   As we have seen, the Springfield deposit was paid by a check payable to J. C. Enright, executor.   The order on which this withdrawal was made was properly received in evidence,—not to show notice to the defendant, but to identify the fund represented by the check as property of the Story estate. It is argued that this check when received and applied by the defendant was not ear-marked and gave no notice that it represented trust funds, or even put the defendant on inquiry regarding that question.   The reason assigned as the basis of this argument is that the check did not specify the estate of which Enright was executor—therein differing from the one involved in *Hale* v. *Windsor Savings Bank, supra.*   That there are cases supporting this contention of the defendant may be admitted.   But by the better reasoning, the addition of the word ''Executor,'' or its abbreviation, ''Exr.,'' to the name of the payee of the check was enough to charge the defendant with notice that the funds belonged to some estate of which Enright was executor; that they were trust funds and not private funds.   It is to be

observed that the question presented is not as to the right of a bank to credit such a check to the private account of the payee or to pay out the money on his private check; it concerns, only, the right of the bank to apply such a check on a debt held by it against the payee, individually. In *State Bank* v. *McCabe,* 135 Mich. 479, 98 N. W. 20, it was held that when one deposited money in his own name with the word "trustee" added thereto, the bank could not apply it to the individual debt of the depositor. In *Bundy* v. *Monticella,* 84 Ind. 119, it was held that the fact that the fund was deposited in the name of "J. C. Wilson, trustee," was enough to charge the bank with notice that it was money held in a fiduciary capacity and could not be applied to Wilson's private debt. It was said that the word "trustee" was not merely *descriptio personae;* that it meant something; and that it imported the existence of a trust, and was notice of the character of the fund. This holding was approved in *Shepard* v. *Meridian National Bank,* 149 Ind. 532, 48 N. E. 346.

In *Brovan* v. *Kyle,* 166 Wis. 347, 165 N. W. 383, a check payable to "Carroll Lucas, Guardian," and so indorsed, was deposited in a bank to the credit of Lucas' private account. A part of the deposit was used to pay Lucas' note to the bank. It was held that the bank took with notice. "The word 'guardian'," says the court, "is a well-understood word of common speech, and implies to the average lay mind that a fund held in the capacity of a guardian does not belong to the guardian, but to the ward. * * * The fact that the cashier did not know who the ward was, is immaterial."

In *Shaw* v. *Spencer,* 100 Mass. 382, 97 A. D. 107, 1 A. R. 115, certificates of stock issued to "E. Carter, Trustee," were pledged for the private debt of Shaw, and it was held that the pledgee took them with notice; that the addition of the word "trustee," alone, had the same effect as the words "A. B., trustee for C. D." This case was expressly approved in *Duncan* v. *Jaudon,* 15 Wall. 165, 21 L. ed. 142, and followed in *Swift* v. *Williams,* 68 Md. 255, 11 Atl. 835; *Marbury* v. *Ehlen,* 72 Md. 206, 19 Atl. 648, 20 A. S. R. 467, and *Alexander* v. *Fidelity & Deposit Co.,* 108 Md. 541, 70 Atl. 209. To the same effect are *Sturtevant* v. *Jaques,* 14 Allen (Mass.) 523, and 3 R. C. L. 551.

The Bellows Falls deposit was handled by the defendant's cashier. It was remitted directly to the defendant, and it is idle to claim that it did not know that it was applying trust funds to a private debt. But it is said that there was no evidence warranting the finding that this deposit had been hypothecated for this debt. However this may be, the finding may be rejected without affecting the result; for without it, enough remains to make a plain misappropriation participated in by the defendant. Therefore the exception to the finding is unavailing. *Waterman* v. *Moody,* 92 Vt. 218, 103 Atl. 325; *Crampton* v. *Lamonda,* 95 Vt. 160, 114 Atl. 42; *Platt* v. *Shields and Conant,* *supra.*

[20, 21]   The defendent filed 18 requests for special findings, which were severally refused and the defendant excepted. All that is said of these in the brief is that they were for "essential facts bearing on the legal question of notice to the bank." But several refer to a deposit in the Ottaquechee Savings Bank, which was not made a basis of recovery, and under such briefing we take no further time with them. The defendant also filed 8 additional requests for findings after a tentative draft of the findings had been submitted to counsel. These were severally refused and exceptions were saved. If under the brief, we are required to say anything of these, it is enough to say that they sought to have the chancellor report the evidence on which certain material findings were made. They were, therefore, addressed to his discretion, and it was not error for him to refuse them. *Winship* v. *Waterman,* 56 Vt. 181; *Allen's Admr.* v. *Allen's Admr.,* 79 Vt. 173, 64 Atl. 1110; *Fife* v. *Cate,* 85 Vt. 418, 82 Atl. 741; *Colvin* v. *Gray,* 95 Vt. 518, 116 Atl. 75.

[22]   There was no error in admitting the $2,800 note and the bank card referring to it. The note was necessary to show that the Bellows Falls deposit went on Enright's private debt. The card showed certain memoranda in the nature of admissions material to the issues. These were subject to explanation, of course, but it was for the chancellor to say whether the explanation was to be accepted or not. And the cards and the explanation were to go to him as evidence, to be given such weight as, on the whole, he thought them entitled to.

[23]   The defendant offered to show that Enright bought certain property at White River Junction for Mr. Story's estate,

and raised the money to pay for it, or a part of it, by means of the $3,500 note hereinbefore referred to. The purpose of this offer was, of course, to show that this note was one that the estate ought to pay, and therefore it was no misappropriation for him to use Story's money to pay it. In the circumstances shown by the record, it was not error to exclude this line of evidence. The property in question was bought on October 19, 1903—the day before the $3,500 was given. This was more than three years after Enright qualified as Story's executor. Why this estate had been kept open so long does not appear. Certainly, it was unnecessary, for it had been for some time ready for distribution. In the meantime, the residuary legatee had died, and the time had elapsed within which her estate should have been fully administered. Had Enright undertaken this transaction for the estate it would have been unwarranted and illegal. But 42 days later, Enright filed in the probate court his final account as executor of Henry L. Story; and therein he gave in detail the transactions involved in the settlement of the estate and the items of property of which it then consisted. No reference is made in this account to the White River Junction property or the $3,500 note. While the assets of the estate are listed in this account, that property is not included; nor is any mention made of the note. So the final decree was based upon the account as rendered; and neither the probate court nor the residuary legatee ever confirmed the transaction as being made for the estate. They had no opportunity to do so. On the other hand, the account and settlement amounted to a deliberate election on Enright's part to treat the whole deal as his private affair—whatever his original purpose may have been. This was all, it must be remembered, before his withdrawal of the deposits as stated above. It is now too late to make the estate accept responsibility for this purchase. Though this was more than three years before his death, Enright never attempted to make it an estate transaction, nor did his administrators when they settled his account as executor of Mrs. Story's estate. We have said that Enright's attempt to make this purchase for the estate would be illegal. In the circumstances, it would amount to a devastavit, for which his bondsmen would be liable unless they could show that the estate had the benefit of it. *Empire State Surety Co.* v. *Cohen*, 93 Misc. Rep. 299, 156 N. Y. S. 935;

*Thayer* v. *Erie County Savings Bank,* 160 App. Div. 300, 145 N. Y. S. 808, affirmed, 217 N. Y. 501, 112 N. E. 446.

So the defendant's offer did not go far enough to affect the result. It did not include a confirmation of the transactions or evidence that the estate had the benefit of it.

*Decree affirmed, and cause remanded.*

## OPINION ON REHEARING*

After the decision in this case was announced and the mandate had gone down, but before the enrollment of the final decree, the defendant brought a petition under G. L. 1567 for a rehearing in this court. In due course the prayer of this petition was granted, and by stipulation of counsel, rehearing was had at the last November Term at Rutland. Realizing the importance of the questions presented, we have carefully re-examined and deliberately reconsidered the whole case. The only questions deemed worthy of further discussion are covered by what follows.

[24] It is urged with much confidence that our holding as to the admissibility of the evidence relating to the purchase of the White River Junction property is contrary to the law of the subject. The argument is that this defendant would be liable only in case it participated in a misappropriation and that misappropriation resulted in a loss to the estate; that this transaction taken as a whole (as the rejected evidence would have tended to show) did not amount to a misappropriation, and did not result in such loss, because the property at White River Junction was bought for and belonged to the estate, and was worth the amount paid for it; and that the misappropriation and loss did not come until some eighteen months later when Enright sold the property and converted the avails.

This argument wholly overlooks the basis of our decision on this question: Enright had been ordered by decree of the probate court to pay over the residue of Mr. Story's estate, which included the very deposits here in question, to the executor of Mrs. Story's estate. His only authority over this residue was to comply with this order. Any other use of the property by him as executor of Mr. Story's estate was unlawful. He had no right to buy real estate for that estate, and the White River Junction

---

*Opinion on rehearing filed May 8, 1924.

property never became and never was the property of Mr. Story's estate. It could not become such until the deal had been ratified in some lawful way and the estate given and accepted the benefit of it.

[25-28] Moreover, the decree aside, Enright was without authority to make this purchase for the estate. An executor is a representative of limited authority. Speaking broadly, his duties are to collect the assets of the estate, pay its debts, and distribute the residue to those entitled. *Rich* v. *Sowles,* 64 Vt. 408, 23 Atl. 723, 15 L. R. A. 850. His powers are only those delegated to him by the will and the statute; and he has no implied powers except such as are necessarily incidental to those so conferred. *In re Munger,* 168 Iowa 372, 150 N. W. 447, Ann. Cas. 1917B, 213. Beyond this, his contracts, though made in the name and for the benefit of the estate, bind him alone. If he attempts to pledge the credit of the estate in such a contract his right to discharge the obligation out of estate funds depends upon its being so beneficial to the estate as to receive the sanction of the probate court. *Lovell* v. *Field,* 5 Vt. 218; *Reynolds-McGinness Co.* v. *Green,* 78 Vt. 28, 61 Atl. 556; *Rich* v. *Sowles, supra.* He cannot borrow money and pledge the credit of the estate for its repayment. If money so borrowed actually goes to the benefit of the estate, the probate court may authorize its repayment. *Merchants National Bank* v. *Weeks,* 53 Vt. 115, 38 A. R. 661. An administrator cannot, nor can an executor without authority given by the will, purchase real estate. *Lamotte* v. *Steidinger,* 266 Ill. 600, 107 N. E. 850; *Wilson* v. *Mason,* 158 Ill. 304, 42 N. E. 134, 49 A. S. R. 162; *Abell* v. *Howe,* 43 Vt. 408. There was no lawful way in which this property could be substituted for money in the bank without the consent of those entitled to the money.

[29] The defendant insists, as it did before, that Mrs. Story's administrator had no right of action against the defendant, and therefore the plaintiff has none. The unsoundness of the argument lies in its false assumption. Mrs. Story's administrator *did* have a right of action against the defendant. She was the residuary legatee under her husband's will. Her rights passed to her administrator. A former representative of the testator joined with the defendant in a misappropriation of the funds of the trust to its loss. In these circumstances, her ad-

ministrator could have proceeded in equity against this *mala fide* holder of her legacy to compel restitution of the sum of which the trust had thus been despoiled. *Veile* v. *Blodgett*, 49 Vt. 270; note to *McBride* v. *Vance*, 112 A. S. R. 732. Though her title to the residue was during administration, prospective and contingent, it was an equitable interest all the time, *Moore* v. *Brandenburgh*, 248 Ill. 232, 93 N. E. 733, 140 A. S. R. 206, and if invaded by the misconduct of the executor equity will lend its aid to protect her interests. *Rowell* v. *Rowell*, 122 Wis. 1, 99 N. W. 473.

In discussing this subject, Mr. Justice Dodge, in the case cited, says, "* * * The equitable beneficial interest in all property of a solvent estate is in the legal distributees during the whole period of administration. If that interest is invaded, they must have the right that a court's aid be invoked. Primarily and ordinarily that right is sufficiently protected by the power and duty of the administrator to bring suit to protect or reclaim any property of the estate. When, however, he allies himself with the wrongdoer, and serves as an obstacle to, instead of a protector of, the rights of his *cestuis que trustent*, courts of equity have no hesitation in recognizing the equitable interests of the latter as sufficient to give them standing as plaintiffs in a suit to accomplish that which the administrator ought with diligence and good faith to pursue, but will not."

How much more does the legatee deserve the assistance of the court when, as here, his money has been appropriated after his title to it has been made complete by the decree of the probate court.

[30] To this right the plaintiff was subrogated by his payment of the judgment. He then stepped into the shoes of Mrs. Story's administrator, became possessed of all remedies that the latter had, *Hodgson* v. *Shaw*, 3 Myl. & C. 190; 25 R. C. L. 1377, and could enforce every right that the latter could, so far as necessary to secure reimbursement, including the right to follow the trust property into the hands of a purchaser with notice, and to proceed against a third person participating in a breach of the trust by his principal. 6 Pom. Eq. § 924; *Rice* v. *Rice*, 108 Ill. 199; *American Bonding Co.* v. *National Mechanics' Bank*, 97 Md. 598, 55 Atl. 395, 99 A. S. R. 466, and note; *Browne* v. *Fidelity & Deposit Co.*, 98 Tex. 55, 80 S. W. 593; *Blake* v.

*Traders' Nat. Bank,* 145 Mass. 13, 12 N. E. 414; *Farmers', etc., Bank* v. *Fidelity & Deposit Co.,* 108 Ky. 384, 56 S. W. 671; note to *Western Surety Co.* v. *Walter* (S. D.), 24 A. L. R. 1523.

Nor is it made to appear that the plaintiff's claim is barred by lapse of time. It is urged that Mrs. Story's administrator knew all about the misappropriation when and before he brought his action against the plaintiff on April 8, 1910; and that inasmuch as it was Mrs. Story's right that the plaintiff seeks subrogation to, the administrator's knowledge was his knowledge; that the plaintiff takes the right subject to such defenses as existed against Mrs. Story's estate, that the statute began to run from the time when her administrator ascertained the facts, and therefore the right in suit has outlawed.

[31] That Mrs. Story's administrator knew, when he brought his action on the bond, that Enright was in default, is true of course. But it does not of necessity follow that he knew of this particular misappropriation or that the defendant took assets of the estate in circumstances making it liable for their recovery. When these facts came to light is not shown by the findings, and we cannot assume that it was prior to June, 1911, the time when the plaintiff learned of them.

[32-35] Our former opinion on this subject went only so far as necessary to meet the defendant's argument. It accepted the defendant's assumption that the statute of limitations applied and that the six-year rule governed, though the plaintiff's brief asserted that the statute had no application. Upon further consideration we are convinced that the plaintiff was right in his contention. An administrator or executor is a technical trustee. *Stickney* v. *Parmenter,* 74 Vt. 58, 52 Atl. 73; *Pond* v. *Pond's Estate,* 79 Vt. 352, 65 Atl. 97, 8 L. R. A. (N. S.) 212. It is well established that, as between a trustee and *cestui que trust,* the statute of limitations does not apply to bar a trust claim, so long as the trust continues. *Evarts* v. *Nason's Estate,* 11 Vt. 122; *Kimball* v. *Ives,* 17 Vt. 430; *Drake* v. *Wild,* 65 Vt. 611, 27 Atl. 427; *Bigelow* v. *Catlin,* 50 Vt. 408. Enright's relation to the funds of the estate did not change when he settled his account; as long as he held the funds, he held as a trustee. *In re Hodges' Estate,* 63 Vt. 661, 22 Atl. 725; 2 Wood, Lim. § 205; *Thompson* v. *McGaw,* 2 Watts (Pa.) 161. And until he repudiated the trust and knowledge thereof was brought home to the *cestui que*

*trust,* the statute of limitations would not begin to run. *Davis*
v. *Eastman,* 68 Vt. 225, 35 Atl. 73. Had Enright lived, he could
not have invoked the statute to protect himself from a suit by
Mrs. Story's administrator. Nor can the defendant, who re-
ceived the funds *mala fide,* and thereby became a trustee *ex
maleficio,* set up the statute as a bar to the right of a *cestui* or
one who has become subrogated thereto. 2 Perry, §§ 828, 832,
859; *Ernest* v. *Croysdill,* 2 DeG. F. & J. 198; *Duckett* v. *National
Mechanics' Bank,* 86 Md. 400, 38 Atl. 983, 63 A. S. R. 513;
*Blake* v. *Traders' Nat. Bank,* 145 Mass. 13, 12 N. E. 414.

The defense of laches may be interposed in such cases, but
no question of that kind is before us.

[36] The defendant now insists that the findings do not
show that the plaintiff has exhausted his remedies against En-
right's estate, and that until he has done this, he cannot recover
from the defendant. In the original brief this point was dis-
cussed under the caption ''Demurrer.'' So we then understood
that a question of pleading, only, was raised, and we so treated
it in our opinion. Assuming that the defendant is entitled on
rehearing to raise the question now presented, it is unavailing.
In the opinion we gave the general rule governing a surety's ob-
ligation in this respect, but there is another and a better reason
why this defendant cannot require the plaintiff to proceed first
against Enright's estate; Enright and the defendant were *joint
tort-feasors.* They joined in an embezzlement of trust funds.
All persons so offending are equally culpable, and there is no
primary and secondary liability between the participants, for all
are equally amenable. *Duckett* v. *National Mechanics' Bank,
supra; American Bonding Co.* v. *National Mechanics' Bank,
supra.* In these circumstances, the defendant has no equities
that the plaintiff was bound to respect.

In this connection it may be worth while to call attention
to just how the findings stand on this subject. There is no ex-
press finding that any attempt was made to secure restitution
from the Enright estate. But the chancellor refers to the tran-
script and exhibits and makes them a part of the findings. It
may be that this was intended as a finding that Mrs. Story's
administrator presented a claim against Enright's estate which
was allowed at $6,944.31, on which he received dividends amount-
ing to $3,387.34, all as shown by plaintiff's Exhibit No. 27. If

so intended, the reference to the exhibit did not amount to a finding.

*The result is that the defendant takes nothing by the rehearing, and the cause is remanded with full costs.*